THE MEYER AND ANNA PRENTIS FAMILY FOUNDATION, INC
v BARBARA ANN KARMANOS CANCER INSTITUTE

Docket Nos. 249438, 249471. Submitted January 18, 2005, at Detroit.
Decided February 10, 2005. Approved for publication April 19,
2005, at 9:15 a.m. Leave to appeal denied, 474 Mich ___.

The Meyer and Anna Prentis Family Foundation, Inc., brought an
action in the Oakland Circuit Court against the Barbara Ann
Karmanos Cancer Institute, formerly known as the Michigan
Cancer Foundation and as the Comprehensive Cancer Center of
Metropolitan Detroit (all referred to as KCI); and the law firm of
Honigman, Miller, Schwartz and Cohn (HMSC). Against KCI, the
plaintiff alleged and sought damages for the breach of an
agreement to rename the cancer center as the Meyer L. Prentis
Comprehensive Cancer Center of Metropolitan Detroit for a $1.5
million donation by the plaintiff. Against HMSC, the plaintiff
alleged and sought damages for breach of fiduciary duty, fraudu-
lent concealment, and failure to disclose a conflict of interest.
The court, Wendy Potts, J., granted summary disposition for
HMSC, ruling that the plaintiff failed to state a claim for breach
of fiduciary duty, fraudulent concealment, or failure to disclose a
conflict of interest, and that if it had stated any such claim, it
would be barred by the statute of limitations. A second judge,
Vesta Svenson, J., at a bench trial, and in a reversal of the first
judge's ruling, dismissed the claim against KCI for compensatory
damages and restitution on the grounds that a nonprofit corpo-
ration cannot prove damages as a matter of law because it does
not generate profits and the remaining damages requested were
too legally speculative to be presented to a jury. That judge also
denied KCI's motion to dismiss on the basis of the plaintiff's lack
of standing. The plaintiff and KCI appealed, and the appeals were
consolidated.

The Court of Appeals *held*:

1. HMSC did not owe a fiduciary duty to the plaintiff. In spite
of the plaintiff having a representative on the board of KCI, HMSC
was hired to advise the corporation, not an officer or director of the
corporation. Although the plaintiff's purpose for entering the
endowment contract was to memorialize the Meyer L. Prentis

name, KCI's purpose was to obtain funding for cancer research. HMSC represented KCI, and HMSC's failure to formally change the name did not injure the center. HMSC did not engage in a conflict of interest by representing multiple parties in the 1985 donation agreement; it represented only KCI.

2. The lower court did not err in determining that the period of limitations had expired, without regard to whether the period was two years under MCL 600.5805(6) or three years under MCL 500.5805(10). The plaintiff's loss of naming rights is subject to a three-year period of limitations. The period of limitations was not tolled under MCL 600.5855 by HMSC's alleged fraudulent concealment of the fact that KCI's name had never been changed because the plaintiff had a representative on the KCI board, which trustee was present when the board discussed a new merger in 1994, and he knew or should have known of the absence of a name change at that time. HMSC had no fiduciary duty to reveal information to the plaintiff. The plaintiff's complaint is time-barred because it was not filed within the three-year period of limitations.

3. HMSC owed its client duties of good faith, loyalty, and avoidance of self-dealing under general agency principles, but did not owe those duties to the plaintiff. The plaintiff had never retained HMSC. As a third party to HMSC's agency agreement with KCI, the plaintiff had no rights in the agreement, even if HMSC's principal did owe some performance to the plaintiff. HMSC had disclosed its potential conflict of interest to the Michigan Cancer Foundation (MCF) and to Peter Karmanos before their accord. That an HMSC attorney signed the accord as chairman of the MCF does not mean that HMSC unethically represented both parties in a legal capacity with respect to the merger.

4. The second trial judge did not erroneously change a previous decision to require the plaintiff to prove liability at the jury trial. The law of the case doctrine, which generally requires a previous decision of an appellate court to be followed, does not apply to previous decisions of a trial court. In this case, the trial court used its unrestricted discretion to review the previous decision and appropriately correct an error made by the prior judge.

5. KCI was entitled to a jury trial with respect to liability for damages, as well as the amount of damages, because a trial by jury, once demanded by one party, may not be waived without the

consent of both parties. The totality of the circumstances in this case did not demonstrate that KCI waived a jury trial on the liability issue.

6. The plaintiff had no standing to bring this suit. When the donation was made, a charitable trust was created. Although the Attorney General, a cotrustee, or a person with a special interest may enforce the terms of a charitable trust, the settlor or his heirs may not.

7. There was no consideration for the naming provision. Consideration is a benefit to one side, or a detriment suffered or service done by the other. Using a phrase such as "[in] recognition of and appreciation to" is not the legal equivalent of "in consideration for . . . ." The naming provision was not a clearly bargained consideration, in spite of the plaintiff's expectations. This case could be different had the agreement stated that the funds would revert to the plaintiff if the name was ever changed. The funds were to be used for cancer research and there is no evidence that they were not used in that manner. KCI did not breach the agreement.

8. HMSC's request for trial-level and appellate sanctions is denied. HMSC did not raise the issue of trial-level sanctions in its appeal and did not move for appellate sanctions.

Affirmed in part and reversed in part.

1. AGENCY — THIRD PARTIES.

Although an agent owes its principal the duties of good faith, loyalty, and avoidance of self-dealing, a third party has no rights in the agency agreement even if the principal owes the third party some performance.

2. COURTS — SUBSEQUENT REVERSALS — LAW OF THE CASE.

The law of the case doctrine applies only to make appellate decisions in a case binding on lower courts in that case; the doctrine does not prevent a trial court from exercising its unrestricted discretion to review its prior decision to correct an error.

3. JURY — CIVIL CASES — DEMANDS — WAIVERS.

Where a jury trial has been demanded in a civil case by a party, the other party may rely on that demand; subsequent waiver of the jury trial must be by all parties.

4. TRUSTS — CHARITABLE TRUSTS — STANDING TO ENFORCE.

Where a donation is devoted for a charitable purpose, a charitable trust is created; while the Attorney General, a cotrustee, or a

person with a special interest may have standing to sue for enforcement of a charitable trust, the settlor or its heirs do not.

5. CONTRACTS — BARGAINED CONSIDERATION — EXPECTATIONS.

The expectations of one party to a contract with respect to consideration are not a basis for a court revising the contract where the bargained consideration is clear; consideration is a benefit to one side or a detriment suffered or service done by the other.

*Mark L. Silverman, M.D., J.D., P.C.* (by *Mark L. Silverman, M.D.*), for the Meyer and Anna Prentis Family Foundation, Inc.

*Dickinson Wright PLLC* (by *Lawrence G. Campbell, Jennifer Uetz Hastings,* and *Paul R. Bernard*) for Barbara Ann Karmanos Cancer Institute.

*Barris, Sott, Denn & Driker, P.L.L.C.* (by *Eugene Driker* and *Kevin Kalczynski*), for Honigman Miller Schwartz and Cohn LLP.

Before: MARKEY, P.J., and FITZGERALD and OWENS, JJ.

PER CURIAM. Plaintiff appeals by right an order summarily dismissing Honigman Miller Schwartz and Cohn (HMSC) as a defendant. Plaintiff also appeals an order granting summary disposition of its claim for legal damages against defendant Barbara Ann Karmanos Cancer Institute,[1] formerly known as the Michigan Cancer Foundation, which merged with the Comprehensive Cancer Center of Metropolitan Detroit (the center). Karmanos Cancer Institute appeals by right an order finding that it breached its agreement with plaintiff. This case arose out of a 1985 endowment agreement in which the donees agreed to rename the center

---

[1] Because of the potential confusion with two defendants, all references to "defendant" will refer to the Karmanos Cancer Institute, while the law firm will be referred to as HMSC.

the Meyer L. Prentis Comprehensive Cancer Center of Metropolitan Detroit. We affirm in part and reverse in part.

Plaintiff first argues the court should not have dismissed HMSC as a defendant because HMSC owed plaintiff a duty where plaintiff relied on HMSC, and HMSC engaged in a conflict of interest by representing multiple parties in the 1985 contract. We disagree.

A trial court's grant of summary disposition pursuant to MCR 2.116(C)(10), on the ground that there is no factual support for a claim, is reviewed de novo. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003). A grant of summary disposition pursuant to MCR 2.116(C)(8) for failure to state a legally sufficient claim is also reviewed de novo. *Adair v Michigan,* 470 Mich 105, 119; 680 NW2d 386 (2004). And a grant of summary disposition pursuant to MCR 2.116(C)(7) is likewise reviewed de novo. *Id.,* citing *Maskery v Univ of Michigan Bd of Regents,* 468 Mich 609, 613; 664 NW2d 165 (2003). Questions of law are subject to review de novo. *Sills v Oakland Gen Hosp,* 220 Mich App 303, 307; 559 NW2d 348 (1996).

When a fiduciary relationship exists, the fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship. *Teadt v Lutheran Church Missouri Synod,* 237 Mich App 567, 581; 603 NW2d 816 (1999), citing *Melynchenko v Clay,* 152 Mich App 193, 197; 393 NW2d 589 (1986). Whether a duty exists is a question of law for the court to decide. *Harts v Farmers Ins Exch,* 461 Mich 1, 6; 597 NW2d 47 (1999). "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt, supra* at 580-581, citing *Vicencio v Ramirez,* 211 Mich App 501, 508; 536 NW2d

280 (1995). However, the placement of trust, confidence, and reliance must be reasonable, and placement is unreasonable if the interests of the client and nonclient are adverse or even potentially adverse. *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 260-261; 571 NW2d 716 (1997).

The only ground plaintiff gave for finding that its trust, confidence, and reliance was reasonable was that a representative of plaintiff was a board member of the center. However, when an attorney is hired to represent a corporation, his client is the corporation rather than the shareholders. *Scott v Green,* 140 Mich App 384, 400; 364 NW2d 709 (1985) (KIRWAN, J., concurring) (explicitly adopted by the majority at 386), citing *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC,* 107 Mich App 509, 514; 309 NW2d 645 (1981). See also *Macomb Co Prosecutor v Murphy,* 233 Mich App 372, 386; 592 NW2d 745 (1999) (citing MRPC 1.13[a]), rev'd on other grounds 464 Mich 149 (2001). Although an attorney must necessarily communicate with a corporation's human agents to effectively represent the corporation, *Diversified Industries, Inc v Meredith,* 572 F2d 596, 602 (CA 8, 1977), the purpose of the communication is representation of the corporation, not the agents themselves.

While a corporation and a shareholder may be treated as one entity for certain purposes when there is a complete identity of interests, *Kline v Kline,* 104 Mich App 700, 702-703; 305 NW2d 297 (1981), a complete identity of interests did not exist here. Plaintiff's purpose for entering the endowment contract was to memorialize the Meyer L. Prentis name, while the center's purpose was to obtain financing for cancer research. There is no indication that failure to legally change the center's name injured the center. Therefore, plaintiff's

interests diverged from those of the center, and plaintiff failed to point to an action on HMSC's part that might signify HMSC was representing plaintiff rather than the center. *Scott, supra* at 400-401 (KIRWAN, J., concurring). Moreover, HMSC's relationship with the center was one of agency, and "[a]gency agreements do not create rights in third parties." *Uniprop, Inc v Morganroth,* 260 Mich App 442, 446; 678 NW2d 638 (2004), citing *Koppers Co, Inc v Garling & Langlois,* 594 F2d 1094 (CA 6, 1979). Thus, plaintiff failed to demonstrate that HMSC owed it an independent fiduciary duty. See *Beaty, supra* at 260-261.

Plaintiff next argues that the court erred in granting HMSC summary disposition on the ground that the period of limitations had expired because MCL 600.5855 operated to toll any period of limitations where HMSC fraudulently concealed the fact that the center's name was never changed and where plaintiff properly pleaded fraudulent concealment.[2] We disagree.

---

[2] Plaintiff also argues that the trial court improperly required plaintiff to diligently investigate the fraudulent concealment. Plaintiff cites *Lewis v Jacobs,* 153 Mich 664, 666; 117 NW 325 (1908), quoting *Smith v Werkheiser,* 152 Mich 177, 180; 115 NW 964 (1908), for the proposition that " '[a] defrauded party does not owe to the party who defrauds him an obligation to use diligence to discover the fraud.' " However, the Michigan Supreme Court has also stated, "We recognize the general rule that the running of the statute will not be postponed if the defrauded person may discover the fraud from public records." *Heap v Heap,* 258 Mich 250, 263; 242 NW 252 (1932) (discussing a former statute, 1929 CL 13976, 13983). Although the Court found in that case that the general rule did not apply because a fiduciary relationship existed and there was nothing indicating the need for investigation, no fiduciary relationship existed here between HMSC and plaintiff. This would indicate that if the failure to obtain the name change were discoverable from public records, then MCL 600.5855 would not operate to toll the period of limitations.

More recently, our Supreme Court indicated that whether a plaintiff should have known about the cause of action was determined by an objective standard when it stated:

An affirmative defense does not deny the allegations of the plaintiff's complaint; rather it claims—"on some ground not disclosed in the plaintiff's pleadings"—that the plaintiff is not entitled to recovery. *Stanke v State Farm Mut Automobile Ins Co,* 200 Mich App 307, 312; 503 NW2d 758 (1993). An assertion that a claim is barred by a statute of limitations is an affirmative defense. MCR 2.111(F)(3)(a).[3] Which statute of limitations applied, whether the limitations period was tolled, and when the limitations period ended are questions of law. *Wickings v Arctic Enterprises, Inc,* 244 Mich App 125, 147; 624 NW2d 197 (2000).

The trial court found that, whether the applicable period of limitations was two years under MCL

"The statute was not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by facts known, and the plaintiff must be held chargeable with knowledge of the facts, which it ought, in the exercise of reasonable diligence, to have discovered." [*Barry v Detroit Terminal R Co,* 307 Mich 226, 232; 11 NW2d 867 (1943) (citations omitted; discussing former statute 1929 CL 13983).]

Therefore, plaintiff was required to exercise reasonable diligence with respect to whether HMSC failed to legally change the center's name. And this Court helped define reasonable diligence when it determined that a witness's potential for liability was discoverable from the outset where the name of the witness to an accident was listed in a police report, and MCL 600.5855 would not toll the period of limitations notwithstanding the plaintiff's argument that the witness lied to police about what occurred. *Witherspoon v Guilford,* 203 Mich App 240, 248-249; 511 NW2d 720 (1994). Thus, because HMSC's potential liability was discoverable from the outset from public records, the trial court was justified in finding that plaintiff was required to exercise diligence in discovering HMSC's failure to obtain the name change.

[3] HMSC did not seek summary disposition pursuant to MCR 2.116(C)(7), the proper rule for granting summary disposition when a claim is barred by a statute of limitations; however, the trial court noted that MCR 2.116(C)(7) was the proper rule and indicated that it considered the argument pursuant to the correct rule.

600.5805(6) or three years, plaintiff's claims were barred. We disagree with HMSC that the period of limitations for malpractice under MCL 600.5805(6) should apply. The conduct required to constitute a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice. Damages may be obtained for a breach of fiduciary duty when a "position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Vicencio, supra* at 508.

In *Local 1064, RWDSU AFL-CIO v Ernst & Young,* 449 Mich 322, 328; 535 NW2d 187 (1995), our Supreme Court, citing the reasoning of *Nat'l Sand, Inc v Nagel Constr, Inc,* 182 Mich App 327, 332-337; 451 NW2d 618 (1990), concluded that MCL 600.5805 set forth the periods of limitations "for traditional common-law torts, regardless of whether the damages sought [were] for pecuniary or physical injury." In *Nat'l Sand, Inc,* this Court noted that "injuries to persons" was broadly interpreted to include invasions of rights such as "loss of consortium, libel, slander and deprivation of civil rights." *Id.* at 335. Therefore, plaintiff's loss of naming rights was within the purview of MCL 600.5805(10) and was subject to a three-year period of limitations. Plaintiff filed suit July 27, 2000; thus, plaintiff was barred from bringing suit under MCL 600.5805(10) if plaintiff's claim accrued before July 27, 1997.

"A claim of breach of fiduciary duty or breach of trust accrues when the beneficiary knew or should have known of the breach." *Bay Mills Indian Community v Michigan,* 244 Mich App 739, 751; 626 NW2d 169 (2001), citing *Baks v Moroun,* 227 Mich App 472, 493-494; 576 NW2d 413 (1998), which was overruled in part *Estes v Ida Engineering & Fabricating, Inc,* 250 Mich App 270, 278; 649 NW2d 84 (2002). The "knew or

should have known" language indicates that when a claim accrues is subject to an objective standard. "[A] plaintiff is deemed to be aware of a possible cause of action when he becomes aware of an injury and its possible cause." *Shawl v Dhital,* 209 Mich App 321, 325; 529 NW2d 661 (1995), citing *Moll v Abbott Laboratories,* 444 Mich 1, 24; 506 NW2d 816 (1993).[4]

Here, HMSC presented evidence that plaintiff's designee on the board of trustees was present when the merger between the center and the Michigan Cancer Foundation was discussed in 1994, and was present when the Karmanos gift and renaming were discussed and voted on in 1995. This indicated that plaintiff should have been aware of a possible cause of action at least by 1995. The "possible cause of action" standard encourages claimants to diligently investigate and pursue causes of action. *Shawl, supra* at 327. "Generally, for fraudulent concealment to postpone the running of a limitations period, the fraud must be manifested by an affirmative act or misrepresentation. The plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Witherspoon v Guilford,* 203 Mich App 240, 248; 511 NW2d 720 (1994), citing *Draws v Levin,* 332 Mich 447, 452; 52 NW2d 180 (1952). "Mere silence is insufficient." *Sills, supra* at 310. If liability were discoverable from the outset, then MCL 600.5855 will not toll the applicable period of limitations. *Witherspoon, supra* at 248-249. It was only plaintiff's lack of diligence in this case that prevented it from filing suit, and MCL 600.5855 did not toll the period of limitations. *Id.*

---

[4] Although *Shawl* involved a medical malpractice action, our Supreme Court, in *Soloway v Oakwood Hosp Corp,* 454 Mich 214, 222; 561 NW2d 843 (1997), extended the "possible cause of action" standard to other tort claims that were subject to the discovery rule. *Baks, supra* at 495 n 10.

Plaintiff next argues that the court improperly granted HMSC summary disposition where HMSC violated duties owed to plaintiff or others of loyalty, the avoidance of self-dealing, honesty, and the avoidance of the appearance of impropriety where (a) it failed to disclose its representation of Peter Karmanos as a client and his identity as the donor for whom the merged entity would be named, (b) it represented both the Michigan Cancer Foundation and the center in the 1994 merger without fully informing the parties of the naming facts, (c) it consistently misrepresented the center's legal name on the center's documents, and (d) one of its members actively worked as the chairman of the board of trustees for the center on the merger after telling the three institutions that the chairman would do otherwise. We disagree.

Under common-law agency principles, "A fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency." *Central Cartage Co v Fewless,* 232 Mich App 517, 524; 591 NW2d 422 (1998), citing *Production Finishing Corp v Shields,* 158 Mich App 479, 486-487; 405 NW2d 171 (1987). See also *In re Runco,* 463 Mich 517, 523; 620 NW2d 844 (2001) (an attorney may be subject to discipline for engaging in self-dealing contrary to the interests of his client); *H J Tucker & Assoc, Inc v Allied Chucker & Engineering Co,* 234 Mich App 550, 574; 595 NW2d 176 (1999) ("Under principles of agency, an agent owes his principal a duty of good faith, loyalty, and fair dealing."). Therefore, under general agency principles, HMSC owed its client duties of good faith, loyalty, and avoidance of self-dealing.

Nevertheless, plaintiff acknowledged that it never formally retained HMSC. Thus, plaintiff was merely a third party to HMSC's agency agreement with its client, the center.

"Under long-settled principles of contract law, agency agreements do not create any rights in third parties, even a party as to whom the principal owes some performance and for whose benefit the principal has retained an agent to render it." [*Uniprop, supra* at 447, quoting *Koppers Co, Inc, supra* at 1098, citing 4A Corbin, Contracts, §779E (1951).]

Hence, while the center was owed a duty of good faith, loyalty, and avoidance of self-dealing, plaintiff was not.

With respect to HMSC's alleged failure to disclose its representation of or the identity of Karmanos, plaintiff presented a December 23, 1993, letter written by Ralph Kliber to Marvin Frenkel, the representative of plaintiff who served as a board member for the center, indicating that the Michigan Cancer Foundation had a donor, which would be recognized by use of the donor's name. However, the letter merely indicates that the Michigan Cancer Foundation — HMSC's client — was aware of a donor in December 1993. It does not implicate HMSC in any type of cover-up. Although the letter does not mention the donor's name, this does not mean that the Michigan Cancer Foundation was unaware of the donor's identity. Moreover, it establishes that Frenkel and, therefore, plaintiff were aware of a potential donor before the merger took place.

On the other hand, HMSC presented letters demonstrating that it disclosed its potential conflict of interest to both the Michigan Cancer Foundation and Karmanos, and that both parties consented to HMSC's representation of Karmanos with respect to the gift. This clearly indicated that the Karmanos representation was adequately disclosed to the Michigan Cancer Foundation, which, by 1995, had merged with the center. According to an attorney with HMSC, Karmanos contacted him about making a gift to the Michigan Cancer Foundation about the time the gift was made,

and asked him to work out the details of making the gift. Until Karmanos decided to give the gift, HMSC had no reason to disclose its representation of Karmanos to anyone.

The attorney stated that he told Karmanos that he first had to check for conflicts of interest; when he determined that a conflict existed, he informed Karmanos that HMSC had to obtain the consent of the Michigan Cancer Foundation before he could represent Karmanos with respect to the gift. This indicated that HMSC acted promptly once it was aware of Karmanos's intentions and once it was aware of the conflict. Given the evidence that HMSC did not fail to disclose its representation of Karmanos or Karmanos's identity as the donor, and the fact that plaintiff's evidence did not establish wrongdoing on HMSC's part, plaintiff's argument is without merit.

With respect to plaintiff's contention that HMSC represented both the Michigan Cancer Foundation and the center in the 1994 merger, HMSC presented letters indicating that it sought and obtained the approval of the president of the center and the president of the Michigan Cancer Foundation in the 1994 merger. Moreover, the letter to the president of the center clearly advised the center to "consider retaining independent counsel for the purpose of advising [the center] on whether to consent to our representation of [the Michigan Cancer Foundation] with respect to the Transaction and to assist [the center] in determining whether separate representation of [the center] with respect to the Transaction is desired."

Plaintiff's evidence that HMSC represented the center in the merger consisted of the signature on the merger documents of an attorney for HMSC who was also the chairman of the center. However, in his role as

chairman, the attorney was the proper person to sign the merger documents (although the documents could also have been signed by the president, vicepresident, or vice-chairperson). Plaintiff noticeably did not provide minutes of the center's board of trustees meeting indicating that the attorney participated in the center's decision to approve the merger, and the certificate of merger did not indicate that it was prepared by the attorney. Therefore, plaintiff's evidence was insufficient to establish a genuine issue of material fact regarding whether HMSC represented both parties in a legal capacity with respect to the merger. Regarding plaintiff's allegation that HMSC did not inform the parties of the naming facts, all the evidence created at the time of the merger indicated that the naming obligation was discussed.

Plaintiff next argues that the trial court erroneously changed its previous opinion to require plaintiff to prove liability at the jury trial. We disagree.

Plaintiff initially argues that by revising its earlier determination, the trial court violated the law of the case doctrine. Whether the law of the case doctrine applies is a question of law subject to review de novo. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). Under the law of the case doctrine, a previous decision of an appellate court should be followed, even if the previous decision was erroneous, in order to "maintain consistency and avoid reconsideration of matters once decided" within a single lawsuit. *Bennett v Bennett*, 197 Mich App 497, 499-500; 496 NW2d 353 (1991), citing *Locricchio v Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1992). Nevertheless, a trial court has unrestricted discretion to review its previous decision, *Sutton v Oak Park*, 251 Mich App 345, 349; 650

NW2d 404 (2002), citing MCR 2.119(F)(3).[5] This Court recently determined that the law of the case doctrine did not apply to decisions of a trial court and that a successor judge could correct errors made by a prior judge. *Tinman v Blue Cross Blue Shield of Michigan,* 264 Mich App 546, 560; 692 NW2d 58 (2004). Therefore, the law of the case doctrine did not preclude the trial court from reversing its prior decision.

Plaintiff next appears to argue that a jury trial was not required with respect to defendant's liability for damages. When a case involves both equitable issues and legal issues, it is appropriate for a jury to decide the factual issues relating to the damages claim and the court to decide the factual issues relating to the equitable claim. *ECCO, Ltd v Balimoy Mfg Co, Inc,* 179 Mich App 748, 751; 446 NW2d 546 (1989).

> [I]n a case such as this where both equitable issues and jury submissible issues coexist, the proper procedure is to hold trial before a jury and follow presentation of evidence with two separate factual determinations; court factfinding on the equitable claims and jury factfinding on the claims of damages.
>
> . . . Plaintiffs are not bound by the court's factfinding on their claim for damages and are entitled on remand to a separate jury trial on that claim. [*Smith v Univ of Detroit,* 145 Mich App 468, 479; 378 NW2d 511 (1985).]

Thus, it appears that defendant was entitled to a jury trial with respect to liability for damages. Nevertheless,

---

[5] MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

plaintiff claims that defendant waived its right to a jury trial when it failed to file a separate jury demand pursuant to MCR 2.508(D)(1). " 'The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law.' " *Wood v Detroit Automobile Inter-Ins Exch,* 413 Mich 573, 585; 321 NW2d 653 (1982), quoting Const 1963, art 1, § 14. MCR 2.508(D)(1) states, "A party who fails to file a demand or pay the jury fee as required by this rule waives trial by jury." However, MCR 2.508(D)(3) states "A demand for a trial by jury may not be withdrawn without the consent, expressed in writing or on the record, of the parties or their attorneys."

Courts have interpreted these provisions to mean that once it is granted, both parties may rely on the right to a jury trial. A defendant may rely on the plaintiff's jury demand, and, once the right to a jury is secured, the plaintiff must obtain the defendant's consent to waive the right. *Marshall Lasser, PC v George,* 252 Mich App 104, 106; 651 NW2d 158 (2002). Absent an express waiver, a trial court, after a jury demand, must honor the right to a jury trial with respect to damages. *Mink v Masters,* 204 Mich App 242, 247; 514 NW2d 235 (1994). A "subsequent waiver of a properly demanded jury trial can be inferred from the conduct of the parties under a 'totality of the circumstances' test." *Marshall Lasser, supra* at 108. Where both parties have actively participated in a lengthy bench trial regarding damages without objection or protest, they have waived their right to a jury trial and may not claim error on appeal. *Id.* at 109.

Plaintiff claims that defendant specifically insisted on a bench trial rather than a jury trial, but does not once cite defendant's comments in the record. Instead, to support its position, plaintiff cites a portion of the trial court's commentary. The trial court's comments do not indicate that defendant argued for a bench trial

only; they merely indicate that neither party wanted the bench trial to coincide with the jury trial. Although no transcript of the pretrial conference was provided on appeal, the final pretrial order indicates that there would be a bench trial followed by a jury trial. And there is no indication that the only issue for the jury was the amount of damages. Moreover, at the beginning of the bench trial, the trial court made several comments signifying that the jury would determine defendant's legal liability. Therefore, the totality of the circumstances did not demonstrate that defendant waived its right to a jury on the liability issue. *Id.* at 108. Thus, the trial court reached the correct result in its written order.

Plaintiff next argues that the second judge erroneously reversed the previous judge's decision that restitution was an issue for the jury and dismissed the compensatory damages claim, including restitution, on the grounds that a nonprofit corporation cannot prove damages as a matter of law because it does not generate profits and the remaining damages requested were too speculative. We disagree.

Here, the first court indicated that the circumstances did not justify rescission, restitution was related to rescission so it could not be granted, and general damages were a legal question for the jury so they could not be granted by the court. With respect to plaintiff's claim that the court's grant of summary disposition denied plaintiff its right to a jury trial regarding general compensatory damages, although a jury determines the amount of damages, it is the court's job to determine whether a plaintiff is legally entitled to the damages. *Phillips v Mirac, Inc,* 470 Mich 415, 428-429; 685 NW2d 174 (2004). In granting defendant summary disposition, the trial court noted that plaintiff had not cited any

authority with respect to the value of the loss of naming rights by a family charitable foundation, found that there was no method to measure damages, and concluded that plaintiff's damages were too speculative. Indeed, plaintiff has not cited any authority to support its claim for damages on appeal. An appellant may not state a position without citing authority and expect this Court to search for grounds to support the claim. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). We decline to address this issue further.

On cross-appeal defendant argues that plaintiff lacked standing, and the trial court erred in denying its motion to dismiss. We agree.

The question of standing is a question of law subject to review de novo. *Lee v Macomb Co Bd of Comm'rs,* 464 Mich 726, 734; 629 NW2d 900 (2001).

It is axiomatic that a party must have standing to bring a lawsuit. *Id.* at 735. To have standing in Michigan, a prospective plaintiff must demonstrate three elements:

> "First, the plaintiff must have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " [*Id.* at 739-740, quoting *Lujan v Defenders of Wildlife,* 504 US 555, 560-561; 112 S Ct 2130; 119 L Ed 2d 351 (1992).]

Defendant argues that plaintiff was legally barred from bringing suit because a settlor of a charitable trust may not enforce a charitable trust. Our Supreme

Court's decision in *Knights of Equity Mem Scholarships Comm v Univ of Detroit,* 359 Mich 235; 102 NW2d 463 (1960), appears to support defendant's argument. That decision indicated that if a donation was made for a charitable[6] purpose, then a charitable trust was created; the motive behind the gift was irrelevant. *Id.* at 242-243. Here, the language of the endowment agreement indicated that the funds were donated for a charitable purpose. The Attorney General, a cotrustee, or a person with a special interest may sue for enforcement of the terms of a charitable trust, but not the settlor or his heirs. *St John's-St Luke Evangelical Church v Nat'l Bank of Detroit,* 92 Mich App 1, 14-15; 283 NW2d 852 (1979), citing Restatement Trusts, 2d, §391, pp 278-280.

Defendant next argues that no consideration existed for the naming provision and the court erred in denying its motion to dismiss. We agree.

The construction given an unambiguous contract is reviewed de novo. *Rossow v Brentwood Farms Dev, Inc,* 251 Mich App 652, 658; 651 NW2d 458 (2002). The primary goal of contract interpretation is to honor the parties' intent. *Klapp v United Ins Group Agency, Inc,* 468 Mich 459, 473; 663 NW2d 447 (2003), citing *Rasheed v Chrysler Corp,* 445 Mich 109, 127 n 28; 517 NW2d 19 (1994). When the contract is unambiguous, the parties' intent is gleaned from the actual language used. *Burkhardt v Bailey,* 260 Mich App 636, 656; 680 NW2d 453 (2004), citing *Universal Underwriters Ins Co v Kneeland,* 464 Mich 491, 496; 628 NW2d 491 (2001). Here, the agreement stated in relevant part:

> The fund is established according to the following provisions:

---

[6] "Charitable" is defined as "generous in gifts to aid the indigent, ill, homeless, etc." *Random House Webster's College Dictionary* (2001).

1. The Prentis Foundation hereby agrees to establish the Fund by contributing to Wayne State University ("University") $1,500,000 in annual installments of not less than $300,000 over a period of not more than five years. The first annual contribution shall be made in 1985.

The Fund shall be used solely for the support of cancer research.

2. In recognition of the significant and long-standing commitment of and leadership and support by the Prentis Foundation in the fields of cancer education, detection and research and the generous financial contributions made over many years by the Prentis Foundation in furtherance thereof;[7] and in further recognition of and appreciation to the Prentis Foundation for the fund it is hereby creating, the University, Center and the Michigan Cancer Foundation ("Foundation") do hereby agree that Center shall be renamed and henceforth be known as the Meyer L. Prentis Comprehensive Cancer Center of Metropolitan Detroit.

Our Supreme Court has defined consideration as a bargained exchange involving " ' "a benefit on one side, or a detriment suffered, or service done on the other." ' " *Gen Motors Corp v Dep't of Treasury,* 466 Mich 231, 238-239; 644 NW2d 734 (2002), quoting *Plastray Corp v Cole,* 324 Mich 433, 440; 37 NW2d 162 (1949) (citation deleted). Consideration is required for a valid contract. *Mallory v Detroit,* 181 Mich App 121, 127; 449 NW2d 115 (1989). " 'As a general rule, where terms having a definite legal meaning are used in a written contract, the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument.' " *Conagra, Inc v Farmers State Bank,* 237 Mich App 109, 132; 602 NW2d 390 (1999), quoting

---

[7] Clearly, the first part of this provision does not constitute consideration because "past consideration . . . would not constitute a legal consideration for the subsequent . . . agreement." *Shirey v Camden,* 314 Mich 128, 138; 22 NW2d 98 (1946).

*Nationwide Mut Fire Ins Co v Detroit Edison Co,* 95 Mich App 62, 64; 289 NW2d 879 (1980). Here, rather than employing the words "in consideration for" or a similar term indicating that the payment of the $1.5 million was in exchange for the naming provision, the parties used "[in] recognition of and appreciation to. . . ." The use of these terms did not indicate a bargained-for exchange with respect to the naming provision.[8]

Although plaintiff may have expected that the naming provision was bargained consideration in exchange for the $1.5 million, courts are not permitted to discern the parties' reasonable expectations and rewrite contracts accordingly. *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 51; 664 NW2d 776 (2003). "[T]he unilateral subjective intent of one party cannot control the terms of a contract." *Burkhardt, supra* at 656. We note that plaintiff easily could have provided that if the name never changed the funds would revert to plaintiff, but plaintiff did not. Therefore, we find that the naming provision was merely a legally unenforceable, gratuitous undertaking on the part of the donees.

Defendant next argues that the trial court erred in finding that defendant breached the agreement "because the undisputed facts show that [the defendant] never made a material breach of that agreement." We agree.

A trial court's factual findings in a bench trial are reviewed for clear error. *Alan Custom Homes, Inc v Krol,* 256 Mich App 505, 512; 667 NW2d 379 (2003). The agreement provided that the $1.5 million was to be used solely for cancer research. There is no indication in

---

[8] "Appreciation" is relevantly defined as "gratitude; thankful recognition" while "recognition" is defined as "the acknowledgement of achievement, service, merit, etc." *Random House Webster's College Dictionary* (2001).

the record that the funds were used for an improper purpose. Therefore, defendant did not breach the agreement.

HMSC has requested that sanctions be imposed against plaintiff. HMSC sought sanctions at the trial court level in connection with its motion for summary disposition. Because HMSC did not raise the trial-level sanctions issue on cross-appeal, the issue is not properly before this Court. *Barnell v Taubman Co, Inc,* 203 Mich App 110, 123; 512 NW2d 13 (1993). Sanctions requested for a vexatious appeal are governed by MCR 7.216(C)(1). MCR 7.216(C)(1) indicates that a motion for sanctions must be filed pursuant to MCR 7.211(C)(8). And MCR 7.211(C)(8) provides that a request for sanctions must be made by motion; a brief on appeal is insufficient to request sanctions. There is no indication that HMSC has separately filed a motion for sanctions at the appellate level. Moreover, no appropriate legal authority was cited to support sanctions. Therefore, HMSC's request for sanctions is denied.

Affirmed in part and reversed in part.