# STATE OF MICHIGAN

# COURT OF APPEALS

---

BRIAN BECK, GUY HANSON, KAREN
HANSON, RAYMOND FAVICHIA,
MARGARET FAVICHIA, JUDITH
SCHLEBECKER, JOHN SCHLEBECKER, and
BERNADETT STEINER,

        Plaintiffs,

and

AUDREY MAHONEY, DAVID OPPENHEIM,
FELICE OPPENHEIM, and PATTY BROWN,

        Plaintiffs-Appellants/Cross-
        Appellees

v

PARK WEST GALLERIES INC, ALBERT
SCAGLIONE, MORRIS SHAPIRO, ALBERT
MOLINA, and PLYMOUTH AUCTIONEERING
SERVICES LTD,

        Defendants-Appellees/Cross-
        Appellants.

UNPUBLISHED
July 7, 2016

No.   319463
Oakland Circuit Court
LC No.   2011-122042-CZ

---

ON REMAND

Before:  MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

We receive this case from the Supreme Court "for consideration of the issues raised in plaintiff's appeal that [we] did not address to the extent those issues relate to claims that are not subject to arbitration." *Beck v Park West Galleries, Inc*, 449 Mich 40, 51; 878 NW2d 804 (2016).  Per the Supreme Court's directive, we have considered the remaining issues, and we affirm in part and reverse in part the trial court's order granting summary disposition to defendants.

-1-

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs purchased artwork at auctions on various cruise ships from defendant, Park West Galleries, Inc. ("Park West"). Plaintiffs claimed that some of the works were fraudulently represented, that they were overcharged, or that they did not receive what defendants represented they were purchasing. Specifically, plaintiffs alleged (1) a violation of Michigan's Fine Art's Statute, (2) fraud, (3) conversion, (4) a violation of the Michigan Consumer Protection Act, (5) breach of contract, (6) a violation of the Michigan Art Multiple Sales Act, (7) negligent misrepresentation, (8) conspiracy, (9) negligence, and (10) breach of warranty of quality and fitness.

With each sale, Park West provided plaintiffs with a certificate of authenticity and a written appraisal. All the purchases made by plaintiffs were accompanied by an invoice under which the parties agreed to the terms of the transaction. By 2007, the invoices contained an arbitration clause.

This action was filed by 13 plaintiffs, but most plaintiffs agreed to dismiss their claims, leaving only plaintiffs Audrey Mahoney, David Oppenheim, Felice Oppenheim, and Patty Brown. Defendants filed a motion for summary disposition arguing that plaintiffs' claims were subject to arbitration. The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) and dismissed all claims brought by plaintiffs Mahoney and Brown, and some of the Oppenheims' claims, on the ground that the claims were subject to an arbitration agreement. The court refused to dismiss any of the Oppenheims' claims that involved invoices that did not contain an arbitration clause, concluding that the arbitration clauses in other invoices were not broad enough to subject all claims to arbitration.

Defendants later filed a second motion for summary disposition pursuant to MCR 2.116(C)(7), requesting dismissal of the Oppenheims' remaining claims on the ground that they were barred by the statute of limitations. The trial court agreed and dismissed the remaining claims. The court rejected the Oppenheims' argument that the limitations period could be tolled under MCL 600.5855 because of fraudulent concealment. Plaintiffs subsequently moved for reconsideration, arguing that the trial court erred by not following *Best v Park West Galleries, Inc,* unpublished opinion per curiam of the Court of Appeals, issued September 5, 2013 (Docket Nos. 305317, 308085).

Plaintiffs appealed the trial court's order and defendants filed a cross-appeal, challenging the trial court's ruling that not all of the Oppenheims' claims were subject to arbitration. In an unpublished decision, our Court affirmed the trial court's ruling that the arbitration agreements were enforceable despite the challenges to the invoices, but reversed the trial court's ruling that all of the Oppenheims' claims were not subject to arbitration. *Beck v Park West Galleries,* unpublished opinion per curiam of the Court of Appeals, issued March 3, 2015 (Docket No. 319463).

Plaintiffs filed an application for leave to appeal to our Supreme Court arguing that our Court erred by concluding that all of their claims were subject to arbitration. The Michigan Supreme Court agreed with plaintiffs, and held that the Oppenheims' claims that arose in 2003 and 2004 were not subject to arbitration because those purchases were not accompanied by an

invoice that contained an arbitration clause. *Beck*, 499 Mich at 50-51. The Michigan Supreme Court remanded the case to our Court for consideration of the remainder of the Oppenheims' issues that do not involve claims subject to arbitration. *Id*. at 43 n 3, 51.

## II. ANALYSIS

## A. STATUTE OF LIMITATIONS

The Oppenheims argue that the trial court erred when it granted summary disposition because their claims are not barred by the applicable statute of limitations. This Court reviews a grant of summary disposition de novo. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). A party moving for summary disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. *Id*. Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiffs' claim is barred under the applicable statute of limitations. *Id*. If there is no factual dispute, whether a plaintiffs' claim is barred under the applicable statute of limitations is a matter of law for this Court to determine. *Id*. at 523.

The Oppenheims do not dispute that their claims are untimely under the six-year limitations period, instead, they argue a genuine issue of fact exists regarding whether the limitations period was tolled by way of the fraudulent concealment statute. MCL 600.5855, the fraudulent concealment statute, reads as follows:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

To take advantage of the fraudulent concealment statute, "[t]he plaintiff must prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery [of the cause of action.]" *Sillis v Oakland General Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996). "The fraud must be manifested by an affirmative act or misrepresentation," *Doe v Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich App 632, 642; 692 NW2d 398 (2004) (citation and quotation marks omitted), and mere silence on the part of the defendant is insufficient. *Sills*, 220 Mich App at 310. Moreover, MCL 600.5855 requires reasonable diligence on the part of the plaintiff, and if the plaintiff should have discovered that liability existed, the statute does not operate to toll the limitations period. *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 48; 698 NW2d 900 (2005).

Importantly, only actions that occur after the alleged injury can conceal plaintiff's causes of action against defendant because actions taken before the alleged injury would not have been capable of concealing causes of action that did not yet exist. *Doe*, 264 Mich App at 641. In

"focusing on the fraudulent-concealment claim, we focus on [a] defendant's alleged actions after the alleged abuse." *Id*.

In their complaint, the Oppenheims alleged that defendants affirmatively acted to prevent them from discovering their claims when defendants provided them with fraudulently created certificates of authenticity. However, these acts (providing faulty certificates of authenticity) form the basis of many of plaintiff's causes of actions and are not an act that occurred *after* the alleged injury. *Id*. Particularly, plaintiff's causes of action for (1) a violation of the Michigan's Warranty in Fine Arts Statute, (2) fraud, (3) breach of contract, (4) negligent misrepresentation, and (5) conspiracy are based in part[1] on the certificates of authenticity issued by defendants. Because the concealing act must be distinct and *after* an act that forms the basis of a claim, the Oppenheims are unable to toll the statute of limitations by way of fraudulent concealment with regard to these claims.

With regard to the five other remaining claims, a genuine issue of material fact existed regarding whether the act of providing the Oppenheims with fraudulently created certificates of authenticity and appraisals was an affirmative act or misrepresentation designed to prevent subsequent discovery. Here, the Oppenheims alleged that the defendants issued false certificates of authenticity. Importantly, in Michigan, a certificate of authenticity warrants the "authenticity of the authorship [of the piece of art.]" MCL 442.322(a). Because it was alleged that defendants fraudulently warranted the authenticity of the artwork, plaintiffs have alleged an affirmative act or misrepresentation that prevented plaintiff's from discovering their causes of action. Evidence was also presented that the certificates of authenticity were issued after plaintiffs' made the purchases at issue.

Additionally, a question of material fact existed regarding whether the Oppenheims exercised reasonable diligence in discovering their claim. Nothing in the record indisputably establishes that the Oppenheims acted unreasonably by failing to discover their claims within the limitations period. As mentioned above, the Oppenheims received certificates of authenticity for the artwork, which warranted the artworks' authenticity. MCL 442.322(a). A reasonable juror could conclude that the Oppenheims reasonably relied on these certificates of authenticity, and that the Oppenheims had no basis to believe that the certificates of authenticity were disingenuous and that the artwork was not what it was purported to be. Nor does anything in the record indicate that the Oppenheims should have been prompted to investigate the genuineness of the artwork they purchased because they were provided with certificates of authenticity that warranted the authenticity of the artwork. On the other hand, a reasonable juror may conclude— as defendants argue—that the Oppenheims did not act reasonably when an Internet search may have provided information during the limitation period that a cause of action may exist.

---

[1] The complaint is not entirely clear as to whether these causes of action are also based on acts other than the issuance of the certificate of authenticity, so to the extent these claims are also based on acts that occurred *before* the issuance of the certificates of authenticity, they may be tolled by the statute of limitations along with the Oppenheims' five other remaining claims.

Consequently, a genuine issue of material fact existed regarding whether the Oppenheims should have discovered the existence of their claims.[2]

Affirmed in part, reversed in part, and remanded for further proceedings. No taxable costs, neither party having prevailed in full. MCR 7.219(A).[3] We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder

---

[2] This conclusion is similar to the one reached in *Best v Park West Galleries*, unpublished opinion per curiam of the Court of Appeals, issued September 5, 2013 (Docket Nos. 305317, 308085), and *King v Park West Galleries*, unpublished opinion per curiam of the Court of Appeals, issued December 2, 2014 (Docket No. 314188), lv den 498 Mich 896 (2015).

[3] We do not address the Oppenheims' assertion that the trial court abused its discretion when it denied their motion for reconsideration as our holding makes that issue moot.