BAY MILLS INDIAN COMMUNITY v STATE OF MICHIGAN

Docket No. 218580. Submitted December 6, 2000, at Lansing. Decided March 2, 2001, at 9:10 A.M. Leave to appeal sought.

The Bay Mills Indian Community brought an action in the Court of Claims against the state of Michigan, the Governor and his predecessors, and the Michigan State University Board of Trustees, alleging that in 1884 and 1885 the state and the then Governor had wrongfully allowed certain parcels of land in Chippewa County that were being held in trust for the plaintiff's predecessors to be sold at tax sales in breach of fiduciary duty and in violation of federal law and the Due Process and Equal Protection Clauses of the federal and state constitutions. The plaintiff sought monetary damages from the state defendants for the loss of enjoyment, use, rents, and profits of the land. The plaintiff also alleged that Michigan State University, as successor to the State Board of Agriculture, was trespassing on a portion of the land at issue. The land in question was a portion of a larger tract that had been reserved in an 1855 treaty for the plaintiff's predecessors. However, before the treaty was ratified by Congress, the federal government had issued land patents for the disputed land to a non-Indian individual, removing the land from the public domain to fee simple absolute private ownership. In 1857, the individual who had acquired the disputed land deeded the land to the then Governor of Michigan to be held in trust for the use and benefit of the plaintiff's predecessors. The land was subsequently placed on the tax roll and, when the property taxes remained unpaid, was sold to third parties at tax sales in 1884 and 1885. The state and the Governor moved for summary disposition on several different grounds, including that certain of the plaintiff's claims were time-barred by the running of the appropriate limitation period. The court, Lawrence M. Glazer, J., granted summary disposition for the state and the Governor, holding that the land was taxable, that the transfer of title of the land at the tax sale was proper, and that, accordingly, the plaintiff had not been wrongfully deprived of the land. The parties stipulated that the dismissal of the claims against the state and the Governor acted to dispose of the trespass claim against the university, and the court entered an order dismissing the claims against all the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. Where federal land is transferred to a private person, it becomes part of the general property in a state and, thus, is subject to ad valorem property taxation. Inasmuch as the property here in question had been transferred by an unrestricted patent to a private individual, it lost its character as federal land and became subject to local ad valorem taxation. The United States Supreme Court held in *Cass Co, Minnesota v Leech Lake Band of Chippewa Indians*, 524 US 103 (1998), that when Congress has made reservation lands fully alienable, the land is taxable unless a contrary intent is clearly indicated. Although the land at issue was never reservation land, it having been transferred by patent to a private non-Indian individual before the treaty relating to the land was ratified, the holding in *Cass* is applicable here. Accordingly, because the land was transferred in fee simple absolute to a non-Indian individual, the Court of Claims properly held that the land became taxable by state and local authorities.

2. Because the federal government relinquished all interest in the disputed land by its transfer by patent to a non-Indian individual before ratification of the treaty concerning the land was ratified, federal restraints on alienation of the land had been removed so as to take the land outside the scope and prohibitions of the Indian trade and intercourse act, 25 USC 177, even if it is assumed that the transfer of the land to the Governor to be held in trust for the plaintiff's predecessors made the land tribal land within the meaning of that act. Accordingly, the Court of Claims properly held that the tax sale was not rendered void by reason of a violation of the Indian trade and intercourse act.

3. The plaintiff's federal constitutional claim against the state and the Governor and his predecessors alleged that the Governor and his predecessors, while acting in an official capacity, violated the plaintiff's due process and equal protection rights by allowing the tax sale of the land, causing the plaintiff and its predecessors to suffer monetary damages. Because the claim is one for damages resulting from the violation of a federal constitutional right, the claim is in essence a 42 USC 1983 cause of action, despite not being so designated. Being a § 1983 action for monetary damages for alleged federal constitutional violations by a state or a state official acting in an official capacity, the claim may not be brought in a state court. Accordingly the Court of Claims properly dismissed the claim based on the alleged violation of federal constitutional rights.

4. The Court of Claims properly dismissed all remaining state law claims on the ground that they were time-barred. The plaintiff's

assertion that there was no applicable statute of limitation at the time of the tax sales in 1884 and 1885 and that, thus, there was no limitation period in which the plaintiff or its predecessors had to bring an action challenging the tax sale is based on a flawed premise, because there was a general six-year limitation period in effect at the time of the tax sales. Moreover, the plaintiff's predecessors were under no disability that would preclude the running of the statutory period, this state having provided by statute since 1841 that any Indian is entitled to the same judicial rights and privileges as any other inhabitant of the state. Even if it were determined that the plaintiff's predecessors had been under a disability to sue, the plaintiff acquired the federal statutory right to sue and be sued in state courts in 1937 pursuant to its reorganization under the Indian Reorganization Act of 1934, 25 USC 461 *et seq.* Accordingly, 1937 was the latest that there might have been any disability on the part of the plaintiff or its predecessors to bring an action challenging the tax sales such as would suspend the running of the appropriate limitation period, and any limitation period had long since run by the time the plaintiff commenced its action in 1996.

5. The claim that the Governor as trustee of the land breached a fiduciary duty is not a continuing claim but is rather a claim that accrued when the beneficiary of that fiduciary duty, the plaintiff's predecessors, knew or should have known of the breach, which in this case was when the public sale of the land took place in 1884 and 1885, the public sale acting as notice of any breach of fiduciary duty or as a repudiation of any fiduciary relationship.

Affirmed.

1. INDIANS — TRIBAL LANDS — LANDS TRANSFERRED BY PATENT — AD VALOREM TAXATION.

The transfer by patent by the federal government to a non-Indian individual of a fee simple absolute title to a parcel of land that lies within the bounds of a larger tract of land that is subsequently granted by treaty to an Indian tribe has the effect, in the absence of an unmistakably clear statement by Congress to the contrary, of making the patented parcel of land fully alienable and thus subject to state and local ad valorem taxation, even where the patented parcel is subsequently acquired by a tribal member or is deeded in trust for the benefit of the tribe.

2. INDIANS — TRIBAL LANDS — LANDS TRANSFERRED BY PATENT — INDIAN TRADE AND INTERCOURSE ACT.

The transfer by patent by the federal government to a non-Indian individual of a fee simple absolute title to a parcel of land that lies within the bounds of a larger tract of land that is subsequently

granted by treaty to an Indian tribe evidences a clear intent to remove any federal restraints on alienation of the patented parcel so as to make any subsequent sale of the patented parcel, even if it has subsequently been acquired by a tribal member or has been deeded in trust for the benefit of the tribe, not subject to the provisions of the Indian trade and intercourse act (25 USC 177).

*Peninsula Legal Services, P.C.* (by *Armand D. Kunz*), for the plaintiff.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Daniel M. Greenberg,* Assistant Attorney General, for the state of Michigan and the Governor.

*Sally S. Harwood,* for the Board of Trustees of Michigan State University.

Before: O'CONNELL, P.J., and ZAHRA and B. B. MacKenzie*, JJ.

B. B. MACKENZIE, J. Plaintiff appeals as of right from orders granting summary disposition to defendants. As relevant to this appeal, plaintiff alleged that the state of Michigan and the Governor and his predecessors (defendants) wrongfully allowed plaintiff's predecessors' real property to be sold at tax sale in violation of the laws of the United States and the Due Process and Equal Protection Clauses of the United States and Michigan Constitutions. We affirm.

### FACTUAL BACKGROUND

In 1855, the United States entered into a treaty with plaintiff's predecessors, reserving certain land for them in Chippewa County. On June 16, 1856, before

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Congress ratified the treaty and before the land in this dispute could be withdrawn, the federal government issued land patents for the property to a non-Indian individual, Boziel Paul. These patents moved the land from the public domain to fee simple absolute private ownership.

On October 12, 1857, Boziel Paul and his wife deeded the property to Kinsley S. Bingham, then Governor of Michigan, to be held in trust for the use and benefit of plaintiff's predecessors, two bands of Ottawa and Chippewa Indians. The land was subsequently subjected to real property taxes, and the taxes went unpaid. In 1884 and 1885, Chippewa County brought suit for nonpayment of taxes. The auditor general then deeded the land to the third parties who had purchased the property at the tax sales.

Over one hundred years later, on November 6, 1996, plaintiff, the successor of those Indians for whom the land was to be held in trust, brought an action in the Court of Claims, seeking monetary damages for the loss of enjoyment, use, rents, and profits of the land. The Court of Claims essentially concluded that the land was taxable, that its transfer at tax sale was proper, and that neither plaintiff nor its predecessors had been wrongfully deprived of the property and, accordingly, granted summary disposition for defendants. This appeal followed.

TAXABILITY OF THE SUBJECT LAND

Plaintiff first contends that the Court of Claims erred in concluding that the 1857 conveyance of the subject land from Boziel Paul to the Governor did not operate to make the land exempt from taxation. In

reaching this conclusion, the court relied on *Cass Co, Minnesota v Leech Lake Band of Chippewa Indians*, 524 US 103; 118 S Ct 1904; 141 L Ed 2d 90 (1998). In *Cass Co*, the United States Supreme Court held that where Congress makes reservation lands freely alienable to Indians or non-Indians, it manifests an unmistakably clear intent that the land is taxable by state and local governments. *Id.* at 106. In the present case, the Court of Claims acknowledged that, unlike *Cass Co*, the land in question was not reservation land, but applying the reasoning of that case, the court concluded that because the land was originally conveyed in fee by the federal government to a non-Indian, Boziel Paul, the federal government intended it to be alienable and, hence, taxable. We agree with the Court of Claims.

Where federal land is sold to a private person, it becomes part of the general mass of property in the state and is subject to ad valorem property taxation. *Oklahoma Tax Comm v Texas Co*, 336 US 342, 353; 69 S Ct 561; 93 L Ed 721 (1949). Thus, the land in this case ceased to be federal land and was subject to taxation when the unrestricted patent was issued to Boziel Paul in 1856. Furthermore, we are satisfied that *Cass Co* compels the conclusion that the land remained subject to taxation when Paul deeded it in trust to the Governor in 1857. In *Cass Co*, the Court addressed the question whether state and local governments could tax reservation land after it was made freely alienable, sold to non-Indians, and subsequently reacquired by tribal members. Citing *Goudy v Meath*, 203 US 146; 27 S Ct 48; 51 L Ed 130 (1906), and *Yakima Co v Confederated Tribes & Bands of the Yakima Indian Nation*, 502 US 251; 112 S Ct 683; 116

L Ed 2d 687 (1992), the Court indicated that when Congress makes reservation lands fully alienable, the land is taxable unless a contrary intent is clearly manifested. *Cass Co, supra* at 113. In *Cass Co*, the Court concluded that once the taxability of the land was established, the land could not become tax exempt once again absent an unmistakably clear statement of Congress, even if the land is reconveyed to a tribal member. *Id.* Importantly, it was the federal act of patenting the land in fee, thus making it fully alienable, that made the land in *Cass Co* taxable.

Although the land at issue in this case was not originally reservation land, as had been the land in *Cass Co*, we do not find that distinction dispositive. Both here and in *Cass Co*, the land enjoyed federal protection status until transferred without restriction by the federal government to a private party. Upon that transfer, the land was removed from federal control and became subject to the state's taxing authority unless and until Congress manifested a contrary intent. Consistent with *Cass Co*, in the absence of any federal intent to once again impose a protected status on the land in this case after it was patented to Boziel Paul, the property continued to remain subject to the state's taxing authority, even when it was transferred to the Governor in trust for tribal members.

We are aware that the Sixth Circuit Court of Appeals decision in *United States on Behalf of Saginaw Chippewa Tribe v Michigan*, 106 F3d 130 (CA 6, 1997), cert gtd and judgment vacated *sub nom Michigan v United States*, 524 US 923; 118 S Ct 2316; 141 L Ed 2d 692 (1998), may appear to conflict with this opinion. However, that decision was vacated and remanded for further consideration in light of *Cass*

*Co.* Furthermore, the decision in that case was based on the taxation of land that had originally been allotted by treaty to individual Indian owners, later conveyed to persons who were not tribal members, and then repurchased by members of the tribe. *Id.* at 132. Here, the land at issue was originally patented to a person who was not a tribal member, Boziel Paul, in fee simple absolute. Under *Cass Co*, these lands, once patented, were taxable by the state and local governments.

### THE INDIAN TRADE AND INTERCOURSE ACT

Plaintiff argues that under the Indian trade and intercourse act, 25 USC 177, which prohibits the conveyance of tribal lands under certain circumstances, the state could not convey the subject land at tax sale without federal approval. The Court of Claims rejected this argument, concluding that the Indian trade and intercourse act applies only to voluntary conveyances by the tribes themselves and not to involuntary conveyances by the state for nonpayment of taxes. We agree.

The Indian trade and intercourse act, sometimes referred to as the Nonintercourse Act, was first passed in 1790 and has not changed materially since that time. *Lummi Indian Tribe v Whatcom Co, Washington*, 5 F3d 1355, 1358 (CA 9, 1993). The act now provides in pertinent part:

> No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.

The purpose of this provision "is to prevent unfair, improvident or improper disposition by Indians of lands owned or possessed by them to other parties, except the United States, without the consent of Congress . . . ." *Federal Power Comm v Tuscarora Indian Nation*, 362 US 99, 119; 80 S Ct 543; 4 L Ed 2d 584 (1960).

To establish a prima facie case of a violation of the act, a plaintiff must prove that (1) the plaintiff is or represents an Indian tribe within the meaning of the act, (2) the land at issue is covered by the Indian trade and intercourse act as tribal land, (3) the United States has never approved or consented to the alienation of the tribal land, and (4) a trust relationship between the United States and the tribe, established by coverage under the Indian trade and intercourse act, has never been terminated or abandoned. *Catawba Indian Tribe of South Carolina v South Carolina*, 718 F2d 1291, 1295 (CA 4, 1983), rev'd on other grounds sub nom *South Carolina v Catawba Indian Tribe, Inc*, 476 US 498; 106 S Ct 2039; 90 L Ed 2d 490 (1986). Here, assuming that the property was tribal land in the hands of the Governor, plaintiff has failed to establish the third and fourth elements. By fee patents to Boziel Paul, the federal government relinquished all interest it had in the disputed land. The land was subsequently subject to taxation and alienation by virtue of Paul's ownership in fee simple absolute. Furthermore, under the fourth element, this alienation by the federal government terminated any trust relationship involving the United States with respect to the land. In short, the United States relinquished all interest in the land before its transfer to the Governor.

As previously discussed, once the United States removed the restraint on alienation of the land by patenting it in fee simple to Boziel Paul, the property was subject to taxation. Nothing in the Indian trade and intercourse act suggests that its protections precluded taxation or that it acted to revive the federal government's interest in the property sufficiently to require its consent for transfer by tax sale. Furthermore, "courts have said that once Congress removes restraints on alienation of land, the protections of the Nonintercourse Act no longer apply." *Lummi, supra* at 1359. See also *Anderson & Middleton Lumber Co v Quinault Indian Nation,* 130 Wash 2d 862, 877-878; 929 P2d 379 (1996). We therefore conclude that the Governor's acquisition of the land in trust for plaintiff's predecessors did not trigger the protections of the act and that the state's transfer of the property at tax sale did not violate the act. The Court of Claims properly granted defendants' motion for summary disposition on this issue.

## THE FEDERAL CONSTITUTIONAL CLAIMS

Plaintiff next contends that the Court of Claims erred in granting summary disposition of plaintiff's federal constitutional claims pursuant to MCR 2.116(C)(8). The court concluded that there was no case law to support claims for damages under the Due Process Clause or the Equal Protection Clause when the claims were brought against the state and the Governor acting in his official capacity. We find no error.

The Court of Claims has exclusive jurisdiction to hear claims against the state and any of its instrumentalities for money damages. *Carlton v Dep't of Correc-*

*tions*, 215 Mich App 490, 501; 546 NW2d 671 (1996). This jurisdiction also extends to suits for injunctive and declaratory relief against state officers where the officer was acting in an official capacity when committing the acts complained of. *Id.* Private individuals, however, have no state court remedy against the state or state officials acting in an official capacity for damages arising out of alleged violations of the federal constitution. *Id.* at 502-503.

Here, plaintiff's action sought money damages for the constitutional violations of previous governors and the present Governor, each acting in his official capacity. As the Court of Claims properly pointed out, plaintiff's due process and equal protection claims were in essence a 42 USC 1983 cause of action. However, a § 1983 action for monetary damages for alleged federal constitutional violations may not be brought in state courts against the state or a state official sued in an official capacity. *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989). Nor may a plaintiff bring such an action by simply giving it another name. *Carlton, supra* at 502-503. Furthermore, because plaintiff sought a monetary award, the suit did not fall within the exception set forth in *Ex parte Young*, 209 US 123; 28 S Ct 441; 52 L Ed 714 (1908), which allows certain suits against state officers for injunctive or declaratory relief. Accordingly, we find no error in the dismissal of plaintiff's federal constitutional claims.

### THE STATUTE OF LIMITATIONS

The Court of Claims granted summary disposition of all remaining noncontinuing state law claims on

the ground that they were time-barred. MCR 2.116(C)(7). Again, we find no error.

Plaintiff acknowledges that its claims accrued in 1884 and 1885, when the subject property was sold at tax sale, and suggests that there was no applicable statute of limitations in effect at that time. Noting that, generally, the statute of limitations in force at the time of the accrual of a cause of action is the statute applied to a claim, and stating that there was no applicable statute of limitations in 1884 and 1885, plaintiff reasons that there was no limitation period in which plaintiff was required to bring this action. The flaw in this argument is that a general six-year limitation period was in effect at the time plaintiff's claim accrued. How Stat 1882, § 8713(7).

Moreover, plaintiff's predecessors were under no disability that would preclude the running of the limitation period. 1841 PA 54, § 1 specifically provided that "any Indian shall be capable of suing and being sued in any of the courts of justice of this state, and shall be entitled to all the judicial rights and privileges of any other inhabitants thereof." Similar provisions have been in effect from 1841 to the present. MCL 600.2011; MSA 27A.2011. Even in the absence of this provision, plaintiff's 1937 reorganization under the Indian Reorganization Act of 1934, 25 USC 461 *et seq.*, expressly adopted a provision allowing it to sue or be sued in state courts. Thus, even if plaintiff or its predecessors were under disability to sue, the disability was removed, at the latest, in 1937, and plaintiff's 1996 state claims were therefore time-barred.

Further, even if plaintiff were under disability until 1937, plaintiff's claims are barred under any potentially applicable statute of limitations. Subsection

6452(1) of the Court of Claims Act, MCL 600.6452(1); MSA 27A.6452(1), states that a claim against the state brought in the Court of Claims expires unless it is filed three years after it accrues. To the extent that plaintiff's claims are based on entitlement to the subject land, the claim accrued when plaintiff's predecessors were disseised of the property, MCL 600.5829(1); MSA 27A.5829(1); plaintiff's complaint alleged that its predecessors were dispossessed of the property in 1884 and 1885. Subsection 73 of the General Property Tax Act, MCL 211.73; MSA 7.118, provides, and has provided since its enactment in 1893 PA 206, § 73, that an action to set aside a tax sale must be brought within five years after the date of purchase or deed at tax sale. Actions to recover for injuries to persons or property must be brought within three years after the claim accrues, MCL 600.5805(8); MSA 27A.5805(8), and this period has applied since 1915. See 1915 CL 12323(2). Finally, the general limitation period that applies to all actions without a specific period of limitation was and remains six years. MCL 600.5813; MSA 27A.5813.

With regard to plaintiff's claim that the Governor as trustee breached his fiduciary duty, it is unclear whether the Court of Claims considered the claim to be a continuing state law claim—and thus not subject to a statute of limitations defense—or a noncontinuing claim to which the defense applies. We conclude that the alleged breach of fiduciary duty at issue in this case was not continuing in nature. A claim of breach of fiduciary duty or breach of trust accrues when the beneficiary knew or should have known of the breach. *Baks v Moroun*, 227 Mich App 472, 493-494; 576 NW2d 413 (1998). Stated otherwise, the

period of limitation begins to run when the fiduciary relationship ends; that is, when all the fiduciary's duties have been discharged or repudiated. *Carpenter v Mumby*, 86 Mich App 739, 750-751; 273 NW2d 605 (1978). Here, if the Governor breached his trust duties as plaintiff claims, the breach occurred when the Governor failed to protect the property from tax sale or to timely redeem the property. In light of the public nature of the tax sale, plaintiff's predecessors should have been on notice of any breach of duty or repudiation of the fiduciary relationship in 1884 and 1885. Plaintiff's breach of fiduciary duty claim was therefore not timely filed.

In light of our conclusion that plaintiff's state law claims were time-barred, we need not reach the question whether the Court of Claims erred in dismissing plaintiff's breach of fiduciary duty and state constitutional claims on the merits.

Affirmed.