# STATE OF MICHIGAN

# COURT OF APPEALS

---

DAWN PEDINELLI, GARY PEDINELLI,
LILLIAN MAZZA, JOHN MAZZA, NANCY
WHITE, and PATRICK WHITE,

Plaintiffs-Appellees,

v

TURNBERRY PARK ESTATES INC.,
LAWRENCE SANT, a/k/a LARRY SANT, and
TERRI SANT,

Defendants-Appellants.

UNPUBLISHED
January 28, 2016

No. 324331
Washtenaw Circuit Court
LC No. 11-001340-CZ

---

Before: SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

The dispute in this case revolves around the payment of dues and assessments to the Turnberry Park Homeowners' Association (the Association). Plaintiffs assert that the cost of the assessments should be divided proportionally between all lot owners in the Turnberry Park Estates residential development, including defendants. Defendants, however, argue that both the original declaration of restrictions and a June 2006 amendment to the original declaration exempted them from having to pay any portion of the assessments. The trial court concluded that the amended declaration was *void ab initio* and entered a judgment in plaintiffs' favor. Defendants now appeal as of right.[1] For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] The matter came before the trial court on cross-motions for summary disposition. The trial court concluded that there were disputed issues of material fact and held a four-day evidentiary hearing. Following the hearing, the trial court adopted and incorporated plaintiffs' proposed findings of facts and conclusions of law.

-1-

Lawrence and Terri Sant are the sole officers of defendant Turnberry Park Estates, Incorporated (the developer).[2] Defendants developed Turnberry Park Estates, a 20-lot residential development in Salem Township. In conjunction with the development, Lawrence had the original declaration of easements, covenants, and restrictions (the original declaration) drafted in May 2006. Subsequently, he amended Article IV of the original declaration in an instrument dated June 6, 2006 and recorded June 9, 2006 (the amended declaration).

As will be discussed in greater detail infra, defendants argue that the amendment procedure in Article VIII of the original declaration governed the amendment process. Article VIII provides that the declaration can be amended by an instrument signed by the developer alone. In contrast, plaintiffs argue that the original declaration could only be amended by following the procedure in Article IX of the original declaration. Article IX(g) provides that "this agreement" can only be amended by following the voting procedure in the Association's bylaws. It is undisputed that the amendment procedure in Article IX(g) was *not* used in this case. Accordingly, one issue that must be resolved is whether the amendment in this case was governed by Article VIII or Article IX.

Plaintiffs all acquired property in the development. Plaintiffs Dawn and Gary Pedinelli signed a purchase agreement with the developer on October 15, 2005 and closed on May 2, 2006. Nancy and Patrick White closed on their lot, which they purchased from David and Nicole Beyersdorf, on June 17, 2008.[3] Lillian and John Mazza closed on their lot, which they purchased from Majestic Building Company, Incorporated, on September 29, 2006.[4] Only the Pedinellis closed on their property before the amended declaration was recorded.

Gary Pedinelli testified to the circumstances surrounding the Pedinellis acquisition of property in the development. He explained that he and his wife received several documents, including the original declaration and the original Association bylaws before signing the purchase agreement for the property on October 15, 2005. Thereafter, he testified they had a 10-day due diligence period during which they could determine if they wanted the property and could rescind the agreement without penalty; however, after the due diligence period expired, they would lose their $38,500 down payment if they rescinded. During the due diligence period the Pedinellis had an attorney review the transaction. Gary Pedinelli reported that the attorney said they were "okay," so they let the due diligence period expire. He added that after the period expired, he and his wife stopped looking for property and started thinking about selling their house and making plans to build a new house on the Turnberry property.

The Pedinellis closed on May 2, 2006. Gary Pedinelli testified that at that time he received, for the first time, a copy of the amended declaration and a copy of the amended

---

[2] For ease of reference, the Sants will be referred to either collectively as the Sants or individually as Lawrence and Terri.

[3] Lawrence testified that the developer had previously sold a lot to the Beyersdorfs.

[4] Lawrence testified that the developer had previously sold a lot to Majestic Building Company.

Association bylaws. He also signed an addendum to his purchase agreement that stated the developer was not obligated to pay any of the Association's expenses. He testified that he had not seen the paperwork earlier.

Gary Pedinelli testified that the amended bylaws provided that all assessments would be equally divided among the lot owners, but that the developer was not obligated to pay anything. He testified that it was "confusing" at closing and that the documents seemed "wrong;" however, he felt trapped because he stood to lose his $38,500 down payment. He explained that he ultimately received a different property than he bargained for because he had not been looking for a property with a lot of dues' expenses. He testified that he would not have proceeded to closing if he had known about the amendment. He indicated that he was not told that the amended declaration had not been recorded or that it was not binding on him. Gary Pedinelli agreed that he never told Frank Julian, the real estate agent involved in the sale, or Lawrence that he wanted to rescind the purchase agreement before closing and that he never discussed his objections with either Lawrence or Julian.

Patrick White testified to the circumstances surrounding the Whites acquisition of property in the development. He testified that he and his wife purchased the property from the Beyersdorfs on June 17, 2008. He testified that his warranty deed was subject to restrictions of record, which he believed included the original and amended declaration. He said that his title insurance company also indicated that his title was subject to the declaration and amended declaration. He testified that, before closing, he did not receive any documentation from the developer, but added that he expected to pay $300 per year in association dues. He later learned from his neighbors that the dues would be higher. He testified that he would have made the same choice to purchase the property if he had known about the original and amended declaration because he was protected by a fiduciary duty.

Lillian Mazza testified to the circumstances surrounding the Mazzas acquisition of property in the development. She testified that she and her husband purchased their lot from Majestic Building Company on August 11, 2006 and closed on September 29, 2006. Although she was not present at closing, she testified that her husband received the original and the amended declaration at closing. She said they also received an addendum dated June 13, 2006, but she was not sure that they actually read it. She testified that they paid $300 in association dues at closing and then were shocked when the dues went up "tremendously." She said that they felt totally deceived.

The Mazzas and Pedinellis received invoices for Association dues for years 2006 to 2011 and the Whites received invoices for dues for years 2008 to 2011. The invoices indicated that the total was divided by 4 homeowners. It is undisputed that the invoices included charges for the preparation of tax returns. However, all tax returns for the pertinent years are for the developer, and it does not appear that the Association filed a tax return until 2012. It is also undisputed that the invoices included "corporate fee" charges for years when the Association

-3-

was dissolved.[5] Finally, the invoices also included charges for insurance, even though it appears that the insurance policy was issued in the developer's, not the Association's name.

On December 1, 2011, plaintiffs filed a multi-count complaint against defendants, alleging breach of contract, violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*., fraud and misrepresentation, and breach of fiduciary duties. Plaintiffs requested a declaratory judgment rendering the amended declaration void and an injunction requesting, in pertinent part, an order eliminating the amended declaration.

In October 2013, the parties filed cross-motions for summary disposition pursuant to MCR 2.116(C)(10). The trial court concluded that there were issues of fact and so conducted an evidentiary hearing. After the hearing, the court granted judgment in plaintiffs' favor. This appeal follows.

## II. BREACH OF CONTRACT

Defendants raise a number of arguments with regard to the effect and interpretation of the original and the amended declarations.[6]

First, they argue that the Pedinellis are subject to the terms of the amended declaration. We disagree. The amended declaration expressly provides that it is not effective until it is recorded. Given that it is undisputed that the Pedinellis closed on their property *before* the amended declaration was recorded, the trial court did not err in finding that the Pedinellis were not subject to the amended declaration.

Next, defendants argue that the original declaration did not require the developer to pay any expenses associated with the Association. Article IV, § 2(a) of the original declaration provided:

> a. Each Owner of property within Turnberry Park Estates, by delivery of a deed transfer, ownership of a lot, agrees to bear the responsibility for their proportional share of the costs, which shall be assessed equally to the number of lots in the Community, for any maintenance, repair or replacement activity

---

[5] Lawrence filed the articles of incorporation for the Association on July 1, 2005. However, on January 9, 2009, Lawrence filed for dissolution of the Association, and the Association was dissolved on March 9, 2009. While the Association was dissolved, Terri sent out invoices for payment bearing the Association's name. On November 28, 2011, Lawrence incorporated the Association as a for profit corporation.

[6] Questions of law are reviewed de novo. *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998). Further, the proper interpretation of a contract and the legal effect of its provisions are also reviewed de novo. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012).

-4-

determined to be necessary by the Declarant or alternatively by a vote according to the procedures stated in Article III of the Association Bylaws of Turnberry Park Estates Home Owners Association.

Article I, § 1(k) provided that " 'Owner' shall mean and refer to the recorded Owner whether one or more persons or entities, of the fee simple title to any property, which is part of Turnberry Park Estates . . . ." Defendants assert that the phrase "by delivery of a deed transfer" means that, because it did not transfer a deed to itself, it was never required to pay under Article IV, § 2(a). However, the developer falls within the definition of "owner" in § 1(k) because it is a fee owner of lots in the development. Further, the developer's deeds were also transferred to it. In other words, the developer did not previously own the property in perpetuity. Nothing in Article IV, § 2(a) requires the deed transfer to be from the developer to a future owner. Accordingly, under the terms of the original declaration, the developer was required to pay a proportionate share of the Association's expenses.

Defendants next argue that because the Mazzas and the Whites closed on their respective properties after the amended declaration was recorded, their title is subject to the requirements in the amended declaration. Deed restrictions are a type of contract between the buyer and the seller of the restricted property. *Bloomfield Estates Improvement Ass'n v City of Bimingham*, 479 Mich 206, 212; 737 NW2d 670 (2007). "A covenant is a contract created with the intention of enhancing the value of property[.]" *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002). In this case, the original declaration provided that the developer would be responsible for a proportionate share of the Association's costs. It also provided two methods to amend the declaration: the general amendment procedure in Article VIII, § 4 and the specific amendment procedure in Article IX(g). Plaintiffs contend that the procedure in Article IX(g) governed any amendment to the declaration that affected the division of the Association's costs. Defendants, however, contend that Article VIII governs because Article IX addresses the maintenance of the private roads within the development.

The cardinal rule in interpreting a contract is to determine the intent of the parties. *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010). Where possible, a court must give effect to every word, phrase, and clause in a contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). An interpretation that renders any part of a contract surplusage or nugatory is to be avoided. *Id*. Where contractual language is not ambiguous, it is construed according to its plain meaning. *Shay*, 487 Mich at 660. "The settled rule regarding statutory construction is that a specific statutory provision controls over a related but more general statutory provision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367 n 22; 817 NW2d 504 (2012), citing *In re Haley*, 476 Mich 180, 198; 720 NW2d 246 (2006). "The same is true with regard to contract provisions." *DeFrain*, 491 Mich at 367 n 22.

Article IV of the original declaration provides in part:

Section 1. Purpose of Assessments

The assessments levied by the Declarant and / or the Association shall be used exclusively to promote the recreation, health, safety, welfare, common benefit and enjoyment of the Owners. For construction, operation and

-5-

maintenance of the *Private Roads, and its easements, known as Turnberry Drive and Turnberry Court . . . as well as any Common Areas or facilities located in/or within the property . . . .*

Section 2. Obligations, Procedures, and Due Dates of Assessments

      a.  Each Owner of property within Turnberry Park Estates, by delivery of a deed transfer, ownership of a lot, agrees to bear the responsibility for their proportional share of the costs, which shall be assessed equally to the number of lots in the Community, for any maintenance, repair or replacement activity determined to be necessary by the Declarant or alternatively by a vote according to the procedures stated in Article III of the Association Bylaws of Turnberry Park Estates Home Owners Association.

      b.  The annual assessment shall be sufficient for all necessary maintenance, *including the construction, reconstruction, repair or replacement of any improvements, described in Exhibit B (Turnberry Drive and Turnberry Court Private Roads) and Exhibit C (Common Areas), existing within the Community, or any other areas under the control of the Association.* Maximum reserve balance of funds shall not exceed Three Thousand Dollars ($3,000.00). [emphasis added.][7]

Article IX provides in part:

      The Owners of any Lot in Turnberry Park Estates ("the parties") . . . as it relates to a certain roadway-easement being 66 feet in width, more or less, *particularly described in attached Exhibit B, and Common Areas described in Exhibit C*, by and between the parties hereto and their successors and assigns, hereby agreeing to each and all of the following terms and conditions:

      (a) The Association, upon assignment by the Declarant, shall become exclusively and solely responsible for the maintenance and repair of the Private

---

[7] The amended declaration deletes Article IV, § 2(a) and replaces it with the following:

      Upon deed transfer from the Developer, each Owner of property within Turnberry Park Estates, by delivery of a deed transfer, ownership of a lot, agrees to bear the responsibility for their proportional share of the costs, which shall be assessed equally to the number of sold lots, excluding any lots owned by the Developer, in the Community, for any maintenance, repair or replacement activity determined to be necessary by the Declarant or alternatively by a vote according to the procedures stated in Article III of the Association Bylaws of Turnberry Park Estates Home Owners Association. Any combining of lots for one resident shall be recognized as one lot.

Roads, *including snow and ice removal, identified as Turnberry Drive and Turnberry Court described in the attached Exhibit "B" and all Common Areas described in Exhibit C,* including all retention basins, as well as regular cutting of weeds and grass. The Association and the Owners who shall each and all of them be members of the Association, shall agree to each and every one of the following provisions as being a covenant running with the land, binding upon anyone with an interest in the property which comprises Turnberry Park Estates. The Association shall assess and collect sufficient funds from the Owners of the property to operate, maintain and repair each and all of the above. [emphasis added.]

It is clear that the assessments discussed in Article IV are the same assessments that are elaborated upon in Article IX. Both sections refer to the same areas and expenses, i.e., the private roads in Exhibit B and the common areas in Exhibit C to the original declaration.

Article VIII of the original declaration, which is titled "General Provisions," provides in pertinent part:

The Declaration may be amended by an instrument signed by the Declarant only, *until such time the Declarant assigns the authority to enforce these Declarations to the Association,* then any Declaration subsequently amended must be by an instrument signed according to the voting procedures stated in Article III of the Association Bylaws of Turnberry Park Estates Home Owners Association. [emphasis added.]

The parties do not assert that the declarant, i.e., the developer, ever assigned the authority to enforce the original declaration to the Association. Thus, the developer retained the ability to amend the original declaration using "an instrument signed by" the developer only. Thus, parts of the declaration could be amended following the procedures in Article VIII.

However, amendments pertaining to the maintenance of the private roads and the common areas, i.e., the matters addressed in Article IX, are governed by a specific amendment procedure. Article IX(g) provides:

(g) No amendment or modification of this agreement is authorized, unless the same is in writing and approved in the manner specified according to the voting procedures stated in Article III of the recorded Association Bylaws of the Turnberry Park Estates Home Owners Association.

The phrase "this agreement" refers to the maintenance agreement for the private roads and common areas, including the assessment of fees related to those matters. As noted supra, both Article IV and Article IX address the same areas and the same assessment costs. Accordingly, because a specific contract provision controls over a general one, *DeFrain*, 491 Mich at 367 n 22, the procedure in Article IX(g) should have been followed.

Because it is undisputed that that procedure was not followed, we conclude that the amended declaration was invalid insofar as it purported to alter the division of the maintenance assessments in Article IV. However, to the extent that the costs invoiced did not pertain to the

maintenance of the private roads in Exhibit B or the common areas in exhibit C of the original declaration, the amendment procedure in Article VIII would have been sufficient to amend the original declaration.

In conclusion, we affirm the trial court's finding that the Pedinellis took their property free from the terms of the amended declaration. Further, we affirm the trial court's finding that the Mazzas and the Whites are not bound by the terms of the amended declaration because it amended the original declaration in violation of the amendment procedure in Article IX; however, we also remand on this issue to determine which, if any, of the assessments charged actually pertained to the maintenance of the private roads and the common areas. To the extent that the fees charged did *not* pertain to the maintenance of the private roads and common areas, the amended declaration could be amended following the procedure in Article VIII, so the developer is not responsible for paying any portion that is not attributed to the maintenance of the private roads and common areas.

### III. MCPA

The trial court found that defendants violated MCL 445.903(1)(n), (s), and (bb). However, defendants argue that the MCPA should not apply to them because Lawrence is a residential home builder and is therefore exempt pursuant to MCL 445.904(1)(a) and *Liss v Lewiston-Richard Inc*, 478 Mich 203; 732 NW2d 514 (2007). We disagree.

MCL 445.904(1)(a) provides that the MCPA does not apply to:

> (a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

In *Liss*, our Supreme Court held that "under MCL 445.904(1)(a), residential home builders are exempt from the MCPA because the general transaction of residential home building, including contracting to perform such transaction, is 'specifically authorized' by the Michigan Occupational Code (MOC), MCL 339.101 *et seq*." *Liss*, 478 Mich at 206. The Court explained that a residential home builder, by statutory definition, is someone " 'specifically authorized' to contract to build homes." *Id*. at 214. Thus, "[f]orming an agreement to build a home is the essence of a residential home builder's activity that is specifically authorized by law." *Id*. at 215.

In this case, however, Lawrence did not form an agreement with the Pedinellis, the Whites, or the Mazzas to build homes for them. Instead, he formed an agreement to sell the Pedinellis property, and then, in a separate capacity, served as the construction manager for them. Although Lawrence served as the construction manager, Gary Pedinelli served as his own general contractor. Further, with regard to the Whites and the Mazzas, the only agreements between them are contained in the original and the amended declarations. Thus, it is apparent that he did not form an agreement with them to build a home. The mere fact that Lawrence is a residential home builder does not exempt him from the MCPA in all of his activities. Rather, he is only exempt in conjunction with activities that are "specifically authorized" by statute. "The party claiming the exemption bears the burden of proving its applicability." *Id*. at 208. Under these facts, defendants cannot meet that burden.

Accordingly, because the residential home builders' exemption does not apply and because defendants do not otherwise challenge the trial court's ruling, we affirm the trial court's findings that defendants violated the MCPA.

## IV. FRAUD OR MISREPRESENTATION

Defendants next argue that plaintiffs claim for fraud or misrepresentation is barred by the statute of limitations.[8] We disagree.

Plaintiffs' claims for fraud and misrepresentation are governed by a six-year limitation period. See *Blue Cross & Blue Shield of Mich v Folkema*, 174 Mich App 476, 481; 436 NW2d 670 (1988) ("In actions for fraud or misrepresentation the applicable limitation period is six years."). Given that the alleged misrepresentation and fraud occurred 2006 at the earliest, the limitations period would expire in 2012. The suit in this case was brought in 2011, so it was timely.

Next, defendants argue that the trial court erred in finding that plaintiffs' claims for fraud and misrepresentation were meritorious. We agree in part.

We have described the relationship between fraud and misrepresentation as follows:

Common-law fraud or fraudulent misrepresentation entails a defendant making a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result. Silent fraud is essentially the same except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation. [*Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012) (citation omitted).]

Here, the Whites and Mazzas cannot establish a claim for fraud or misrepresentation against defendants because they did not purchase their properties from defendants. Instead, the Whites purchased from the Beyersdorfs and the Mazzas purchased from Majestic Builders. Thus, defendants did not make *any* representations to the Whites and the Mazzas at closing. See *Forge v Smith*, 458 Mich 198, 212; 580 NW2d 876 (1998) (holding that the plaintiffs' claim for misrepresentation failed because the plaintiffs could not show that the defendant had made a representation of a past or existing fact). Thus we reverse the trial court's order to the extent that it found the Whites and the Mazzas had a valid cause of action for fraud or misrepresentation based on the amended declaration.

---

[8] If there is no factual dispute, this Court reviews de novo whether a claim is barred by the statute of limitations. *Sills v Oakland Gen Hosp*, 220 Mich App 303, 307; 559 NW2d 348 (1996).

However, the Pedinellis were presented with the amended declaration for the first time at closing. They were not told that the amendment was not legally effective and binding until it was recorded. Defendants represented to the Pedinellis that the amendment was binding on them when they sent invoices charging the Pedinellis under the terms of the amended declaration even though the Pedinellis did not take subject to the amended declaration, which was not recorded until after they closed. In sending the invoices, it is clear that defendants intended the Pedinellis to rely on them and actually pay the amount assessed. Further, Gary Pedinelli's testimony demonstrates that he did, in fact, rely on the representation and pay the invoices that were issued pursuant to the amended declaration instead of the original. Thus, we affirm the trial court's finding that the Pedinellis had a claim for fraud and misrepresentation based on the amended declaration.

In addition, to the extent that plaintiffs brought a claim for fraud based on defendants' misrepresentation regarding the dissolution of the Association and the charges for tax returns, corporate fees, and the payment of insurance premiums that were not actually incurred by the Association, we conclude that the trial court did not err in finding plaintiffs' claims meritorious. The record shows that the Association was dissolved in 2009, but that Terri continued to send invoices to plaintiffs using the Association's name. Defendants' representations on the invoice indicated that they expected plaintiffs to rely on the statements and pay the bill. Further, in reliance on the bill, plaintiffs actually paid the bill for a number of years. The same rationale applies to the inclusion of charges relating to the tax returns for the developer and the insurance premiums for the developer. The charges were on the invoices because defendants wanted plaintiffs to pay them. In reliance on the invoices, plaintiffs actually paid and were, as a result, damaged. Accordingly, the claim for misrepresentation as to the representations on the invoices was meritorious and the trial court's ruling is affirmed.

## V. BREACH OF FIDUCIARY DUTY

Defendants next argue that plaintiffs' claims for breach of fiduciary duty are barred by the statute of limitations. We agree in part.

"A claim of breach of fiduciary duty or breach of trust accrues when the beneficiary knew or should have known of the breach." *Prentis Family Foundation Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005), quoting *Bay Mills Indian Community v Michigan*, 244 Mich App 739, 751; 626 NW2d 169 (2001). Thus, "when a claim accrues is subject to an objective standard" and a plaintiff "is deemed to be aware of a possible cause of action when he becomes aware of an injury and its possible cause." *Prentis Family Foundation*, 266 Mich App at 48 (quotation omitted). Here, the Pedinellis were aware of the amended declaration at closing in 2006. Likewise, because the amended declaration was recorded in June 2006, the Whites were on constructive notice of it in 2008 and the Mazzas were on constructive notice of it in September 2006. Thus, the Whites' claim for breach of fiduciary duty with regard to the amended declaration accrued in June 2008, and the Pedinellis and the

-10-

Mazzas' claims accrued in 2006.[9]  Accordingly, the limitations period for the Pedinellis and the Mazzas would have run in 2009 and the period for the Whites would have run in June 2011.  The complaint was not filed until December 2011.  Thus, the claim for breach of fiduciary duty based on the amended declaration was barred by the statute of limitations.[10]

However, to the extent that plaintiffs argue the Sants breached their fiduciary duty when they invoiced them for the preparation of tax returns in 2008, 2009, and 2010, we conclude that the claims were not time-barred.  It is clear that the breach of fiduciary duty claims were timely as to the tax returns from 2009 and 2010.  Further, the claim pertaining to the 2008 tax return preparation charge accrued, at the earliest, on January 5, 2009, which is when plaintiffs were invoiced for the charges associated with the 2008 tax return.  Thus, the three-year limitations period would have expired in January 2012.  The complaint was filed in December 2011.  Accordingly, the claims based on the tax returns were not barred by the limitations period.[11]

We reverse the trial court's decision insofar as the court found that defendants had breached their fiduciary duty to plaintiffs with regard to the circumstances surrounding the amended declaration because those claims are barred by the statute of limitations.  However, we affirm the balance of the breach of fiduciary duty claims as they pertain to charging plaintiffs for tax returns filed on behalf of the developer.

## VI.  CONCLUSION

---

[9] "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advise of another."  *Prentis Family Foundation*, 266 Mich App at 43 (alteration in original; quotation omitted).  If there is no fiduciary relationship, then the fiduciary has no duty "to act for the benefit of the principal regarding matters within the scope of the relationship."  *Id*.  In this case, it is not clear that the Sants owed a fiduciary duty to the Whites and the Mazzas when they amended the declaration.  At that point in time, the Mazzas and the Whites were only prospective buyers and had no relationship with defendants whatsoever.  The parties, however, do not address this issue.  Assuming *arguendo*, that there was a fiduciary duty owed to the Whites and the Mazzas, as detailed supra, the limitations period expired before they filed their claim.

[10] Further, to the extent that plaintiffs argue the Sants breached their fiduciary duties by exempting themselves from paying a portion of the costs that benefit the Sants only—such as mowing the lawn along the easement in front of the developer's lots—we conclude that claim is also time-barred.  Because the payment structure was authorized in the amended declaration, any objection to the payment of fees associated with maintaining the easement would have accrued in June 2008 for the Whites and in 2006 for the Mazzas and the Pedinellis.

[11] On appeal, defendants do not argue that the substance of plaintiffs' breach of fiduciary duty claims lacked merit.  Accordingly, we affirm the trial court's finding that defendants breached their fiduciary duty when they charged plaintiffs for tax returns filed on behalf of the developer.

In conclusion, we affirm the trial court's finding that the original declaration obligated the developer to pay a proportionate share of the Association's expenses. As to the Pedinellis, we affirm the trial court's ruling that they took their property free from the terms of the amended declaration as it was not recorded until after their closing.

However, because the amended declaration was recorded prior to the closings of the Mazzas and the Whites purchases, we must address the trial court's holding that the amended declaration is *void ab initio* because it was adopted in violation of the amendment procedure in Article IX. We agree, as discussed above, that to the degree the assessments were for the purposes set forth in Article IX, they are void because they were not adopted consistent with that article's requirements. However, it is not clear from the present record whether all of the assessments pertained to the maintenance described in Article IX. To the degree they do not, we conclude that they could have been amended under the procedure in Article VIII. On remand, therefore, the trial court shall determine, which, if any, of the assessments were not for the purposes described in Article IX. As to those assessments, compliance with Article IX procedures was not required, so the developer could properly reallocate responsibility for their payment under the Article VIII procedures.

Additionally, we affirm the trial court's findings that defendants violated the MCPA.

We also affirm the trial court's ruling in plaintiffs' favor on their claims for misrepresentation based on the improper invoices for tax returns, and we affirm the trial court's finding that the Pedinellis had a claim for fraud and misrepresentation based on the amended declaration. However, we reverse the trial court insofar as it found that the Whites and the Mazzas had a valid cause of action for fraud or misrepresentation based on the amended declaration.

Finally, because it is barred by the statute of limitations, we reverse the trial court's decision to the extent that it found defendants breached their fiduciary duty with regard to the circumstances surrounding the amended declaration. However, we affirm the balance of the breach of fiduciary duty claims as they pertain to charging plaintiffs for tax returns filed on behalf of the developer.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Stephen L. Borrello

-12-