*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARINA SOLIMAN,

       Plaintiff-Appellee,

and

MICHIGAN AMBULATORY SURGICAL
CENTER, LLC,

       Intervening Plaintiff,

v

HUNG QUOC DINH and LOC NGUYEN,

       Defendants,

and

HOME-OWNERS INSURANCE COMPANY,

       Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 344978
Macomb Circuit Court
LC No. 2016-002248-NI

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

This lawsuit filed under the no-fault act, MCL 500.3101 *et seq.*, arises out of a rear-end automobile collision. A jury found defendant Home-Owners Insurance Company liable for $78,671.53 in allowable medical expenses and $9,440.58 in no-fault interest for a total award in plaintiff Marina Soliman's favor of $88,112.11. For the reasons set forth below, we affirm.

-1-

## I. ADMISSION OF EVIDENCE

## A. STANDARD OF REVIEW

Defendant first asks this Court to reduce the allowable medical expenses awarded based on its position that Soliman failed to prove the reasonableness of $60,678.78 of those charges. According to defendant, "hearsay medical bills" were inproperly admitted because defendant was deprived of its ability to challenge the reasonableness of the bills' charges through cross-examination. "When an evidentiary issue is preserved, a 'trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo.' " *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018), quoting *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

## B. ANALYSIS

During trial but after the majority of Soliman's proofs were presented—and while the trial court "was apparently under the mistaken belief that we had agreed on exhibits"— Soliman sought to admit exhibits 1A through 1J, which consisted of bills from several medical providers. Defendant objected, asserting that admitting bills from providers with no opportunity to cross-examine any witnesses with respect to the reasonableness of the charges in those bills was improper. In response, Soliman directed the trial court to this Court's decision in *Kallabat v State Farm Mut Auto Ins Co*, 256 Mich App 146; 662 NW2d 97 (2003), as support for the proposition that the reasonableness of a charge requires no testimony and is simply a question for the jury to resolve. The trial court, relying on *Kallabat*, admitted all of the challenged exhibits. As a result, the jury was presented with the following bills:

- a $13,156.92 bill from American Anesthesia,

- a $1,705.75 bill from Beaumont Health System,

- a $3,802.00 bill from Detroit Anesthesia,

- a $107.00 bill from Grace Medical,

- a $3,944.86 bill from IWP,

- a $15,020.00 bill from Marina Rehab,

- a $14,020.00 bill from Michigan Ambulatory Surgical Center,

- a $16,410.00 bill from Michigan Head and Spine and Premier MRI,

- a $615.00 bill from Oakland Physical Medicine, and

- a $24,050.00 bill from Spine Specialists.

The jury awarded Soliman allowable medical expenses in precisely these amounts, and the trial court entered a judgment reflecting the same, with one exception: The jury reduced the allowable medical expenses attributed to Michigan Head and Spine and Premier MRI's charges from $16,410.00 to $2,250.00. The verdict form does not reflect any indication as to the reason for this reduction, but the only billing-specific witness presented by Soliman was from Michigan Head and Spine and Premier MRI. On appeal, defendant argues that if it had the opportunity to cross-examine billing-specific witnesses from the other providers, the jury may well have reduced those amounts also.

"[U]nder the no-fault act, a medical provider will only be paid for reasonable and necessary charges actually incurred." *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595, 609; 928 NW2d 726 (2018). This is because the no-fault act requires that insurers only pay on behalf of insureds "reasonable" charges for particular products and services. *Douglas v Allstate Ins Co*, 492 Mich 241, 274-277; 821 NW2d 472 (2012). Indeed, the no-fault act also requires that insurers "challenge the reasonableness of a medical provider's charges and that medical providers should expect no less." *Auto-Owners Ins Co*, 326 Mich App at 609-610. Although the no-fault act does not define what a "reasonable" charge is, Michigan caselaw has made it clear that the term is not synonymous with a "customary fee a particular provider charges;" rather, "the customary fee is simply the cap on what health-care providers can charge, and is not, automatically, a reasonable charge requiring full reimbursement . . . ." *Id*. at 610 (quotation marks and citation omitted).

" 'Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense.' " *Kallabat*, 256 Mich App at 151, quoting *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990). "In determining damages for allowable expenses, the jury must not be allowed to speculate concerning the cost of a particular procedure or service, and a trial court should grant a motion for judgment notwithstanding the verdict if the jury was permitted to engage in such speculation." *Id*.

To support the reasonableness of the charges below, Soliman relied almost exclusively on her physicians' testimony. Soliman's primary care physician testified that her office's records reflected a $107.00 balance as of September 2015, that she was "not sure about the actual number," and that—most importantly—the amounts her office charged were reasonable. The other physicians involved testified that their services were the product of the primary care physician's referrals. And at least one of those other physicians testified that his charges were "very reasonable for all . . . we have done." Moreover, itemized bills reflecting each providers' charges were presented to the jury. Although we believe that this evidence is quite close to the minimum required, it is our view that, under binding caselaw from this Court, it was sufficient.

This Court's decision in *Kallabat* squarely addressed the manner in which a plaintiff must prove reasonableness. *Kallabat*, 256 Mich App at 151-153. In that case, although the "plaintiff sought treatment from several physicians," only one of those physicians "gave specific testimony that his treatments were reasonably necessary and that his charges were reasonable." *Id*. at 148-149. The defendant moved for a directed verdict with respect to the other physicians' charges, claiming that plaintiff failed to present sufficient evidence that their charges were reasonable (as

well as that the services they provided were reasonable and necessary). *Id*. at 149. The trial court denied that motion, and the defendant appealed. *Id*. at 150. On appeal, the defendant argued that the plaintiff "fail[ed] to introduce evidence that the medical bills incurred in the treatment by [two of the other physicians] were both reasonable in amount and reasonably necessary to [the] plaintiff's care, recovery, or rehabilitation." *Id*. at 151. This Court explained that, "[a]t its core, [the] defendant's claim is that a plaintiff in an action [for PIP benefits] must offer *direct* evidence from the treating physician that the expenses incurred were both reasonable and reasonably necessary in order for the plaintiff to prevail." *Id*. at 151 (emphasis in original). Then this Court squarely rejected that argument: "We find no such requirement within the language of the statute, and we cannot find, and defendant does not cite, any binding precedent in this regard." *Id*.

In reaching that conclusion, this Court was primarily persuaded by two factors: (1) one physician's testimony "that the care he rendered was reasonably necessary and related to the automobile accident and that his fees were reasonable," and (2) the fact that the "plaintiff provided the jury with itemized bills for every expense . . . ." *Kallabat*, 256 Mich App at 152. Regarding the first fact, this Court emphasized that the one physician's testimony that his charges were reasonable was sufficient to "support[] a legitimate inference that [the other physicians'] charges and treatment were also reasonably necessary" in light of the fact that all of the doctors "reached the same diagnoses . . . ." *Id*. Regarding the second, this Court emphasized that "[t]he jury was able to scrutinize each expense [on the other physicians' bills] and compare [the testifying physician's] bills, which he described as reflecting reasonable charges . . . to determine whether the expenses reflected therein were also reasonable." *Id*. at 152-153.

This Court is bound by *Kallabat*.[1] And here, as in *Kallabat*, Soliman's primary care physician, the physician who made the majority of the referrals, testified that her charges were reasonable, and Soliman presented itemized bills for all of the charges at issue. Yet, despite the similarities between this case and *Kallabat*, defendant argues that a billing witness's testimony was required with respect to each service provider. We disagree. Just as there is no "requirement" that every physician testify that his or her charges were reasonable within the language of the no-fault act or in any binding precedent, there is also no requirement that every service provider present a billing witness to testify that his or her office's charges were reasonable.

Even *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431; 814 NW2d 670 (2012), the very case that defendant relies on, does not support the existence of such a requirement. In fact, that case does not even address what is sufficient to survive a directed-verdict motion with respect to the reasonableness of charges in this context. Rather, the issue presented in *Bronson* was whether the defendant-insurers were "permitted by the no-fault act to discover the wholesale cost to plaintiff of surgical implant products used in treating defendants' insureds when determining whether plaintiff's charges for those surgical implant products are reasonable under the act." *Id*. at 442. Specifically, the plaintiff-provider refused "to provide copies of the invoices showing the cost to plaintiff of the items billed as 'supply implants.' " *Id*. at 436. This Court held that the defendant was entitled to that discovery: "We conclude that, in accordance with defendants' clear statutory right and obligation to question the reasonableness of the charges, the

---

[1] See MCR 7.215(J)(1).

no-fault act permits defendants to discover the wholesale cost to plaintiff of the surgical implant products for which the insureds were charged." *Id*. at 442-443. We are unaware of anything preventing defendant from obtaining similar discovery in this case.

While defendant was unable to cross-examine a witness presented by Soliman regarding the reasonableness of the charges at issue, defendant's defense was not solely limited to cross-examination. Soliman's effort to prove the reasonableness of the charges at issue was essentially limited to the weakest evidence imaginable: she relied only on the bills themselves and testimony by a couple of providers that some were reasonable. Although that evidence is sufficient to survive a directed-verdict motion under *Kallabat*, it is not the strongest possible evidence. To contradict that evidence, defendant was not required to simply rely on the bills and this limited testimony. Defendant could have, for example, pursued the "wholesale cost" incurred by each provider with respect to each service at issue like the defendant-insurers sought discovery of the "wholesale cost" of the surgical implant products at issue in *Bronson*. Additionally, defendant could have presented testimony of similar physicians testifying as to their rates or done a number of other things to undermine evidence regarding the reasonableness of the charges. While cross-examining Soliman's witnesses is certainly a viable way to challenge the reasonableness of those charges (as it apparently was regarding the MRI charges), it simply cannot be said that it was the only way to do so.

In sum, because Soliman was not required to provide specific witnesses to support the reasonableness of the charges in the medical bills that she relied on, we reject defendant's argument that a specific billing witness was required for each. Like the *Kallabat* Court, we conclude that the physicians' trial testimony that their charges were reasonable could support a legitimate inference that the related charges were also reasonable, and that Soliman's presentation of itemized bills that permitted the jury to scrutinize each expense was sufficient evidence to survive a directed-verdict motion in this regard. Accordingly, we affirm the trial court's entry of the judgment reflecting the jury's verdict awarding these allowable medical expenses.

## II. STANDING

## A. STANDARD OF REVIEW

Defendant's next argument focuses on Soliman's recovery of $24,050.00 in allowable medical expenses arising out of services provided to Soliman by Spine Specialists of Michigan. Defendant contends that reversal of this portion of the award is required because Soliman assigned a claim for PIP benefits with respect to services provided by Spine Specialists. "Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are . . . reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). "This case also presents questions regarding the interpretation of the court rules, which are also reviewed de novo." *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014). "Whether a party has standing is a question of law subject to review de novo." *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011).

## B. ANALYSIS

During trial, defendant moved for a directed verdict with respect to Soliman's PIP claim to the extent it sought benefits pertaining to services provided by Spine Specialists of Michigan. Defendant sought dismissal of all of Spine Specialists' bills—for a total of $24,050.00—because Soliman had assigned her rights to a claim for those benefits to Spine Specialists. The trial court denied defendant's motion.

In this case, Soliman's assignment of her right to past due benefits to Spine Specialists is not contested on appeal. Rather, the issue presented is whether Soliman was nevertheless able to pursue that assigned right. In other words, defendant is in essence challenging Soliman's standing to pursue a claim for PIP benefits on behalf of Spine Specialists. "It is axiomatic that a party must have standing to bring a lawsuit." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 56; 698 NW2d 900 (2005). Michigan caselaw requires that three separate elements be established to show that a party has standing: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (quotation marks and citation omitted).

Importantly, the assignment at issue here—an assignment from Soliman to Spine Specialists that is dated October 2, 2017—was executed *after* Soliman filed this lawsuit. The Michigan Court Rules squarely address such an assignment. Specifically, MCR 2.202(B) provides, in relevant part, as follows:

> If there is a change or transfer of interest, the action may be continued by or against the original party in his or her original capacity, unless the court, on motion supported by affidavit, directs that the person to whom the interest is transferred be substituted for or joined with the original party, or directs that the original party be made a party in another capacity.

No motions for substitution, joinder, or imposition of a different capacity were made. Consequently, interpreting and applying MCR 2.202(B) according to its plain and ordinary meaning, Soliman was entitled to continue pursuing this lawsuit in her name. See *In re McCarrick/Lamoreaux*, 307 Mich App 436, 446; 861 NW2d 303 (2014) ("The language of the court rule itself is the best indicator of intent. If the plain and ordinary meaning of a court rule's language is clear, judicial construction is not necessary.").

Defendant claims that a distinction should be made between the assignment of a right to recovery and the assignment of the right to sue. However, the assignment provides that Soliman "assign[ed] to Spine Specialists Michigan, P.C. all no-fault benefits presently due or past due" and her "right to recover for no-fault interest and attorney's fees." An assignment is a contract. *Weston v Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987). "The primary goal of contract interpretation is to honor the parties' intent." *Prentis Family Foundation*, 266 Mich App at 57. Thus, "[w]hen the contract is unambiguous, the parties' intent is gleaned from the actual language

used." *Id.* "This Court may not 'read into the contract terms not agreed upon by the parties.' " *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 719; 916 NW2d 218 (2018). Applying the plain and ordinary language of the assignment at issue here, it is apparent that Soliman assigned the right to *recover* "all no-fault benefits," "interest[,] and attorney's fees." Defendant's assertion that the assignment only speaks to an assignment of the "right to sue" is not supported by any contract language, and this Court is prohibited from reading language into the contract that is simply not there. *VHS Huron Valley Sinai Hosp*, 322 Mich App at 719. The only arguable reference to a "right to sue" is the assignment's reference "that Spine Specialists of Michigan, P.C. may pursue collection on its own against [Soliman's] insurance company," but that reference does not identify a "right to sue" that was assigned, much less demonstrate that a "right to sue" was the only right assigned. Instead, the assignment simply indicates that Spine Specialists is permitted but not required to pursue a claim for PIP benefits against defendant based on the services it provided to Soliman.

Because Soliman had standing to pursue a claim for PIP benefits against defendant with respect to the services provided by Spine Specialists pursuant to MCR 2.202(B), we reject defendant's argument, affirm the trial court's denial of Soliman's motion for a directed verdict, and, affirm the judgment reflecting the jury verdict of an award of $24,050.00 in allowable medical expenses for services provided by Spine Specialists to Soliman.[2]

Affirmed. Soliman may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Deborah A. Servitto

---

[2] We also conclude that the trial court's decision to deny defendant's motion to amend its affirmative defenses was not an abuse of discretion. As defendant concedes, the Michigan Supreme Court issued *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), on May 25, 2017, and Soliman executed the assignment in favor of Spine Specialists' in October 2, 2017, and provided defendant with that assignment just one day later, on October 3, 2017. Yet, as the trial court emphasized, "defendant made no attempt to amend its affirmative defenses to include the assignment after it was executed even though trial did not commence until May 30, 2018." Soliman was prejudiced by that nearly eight-month delay because she presented her proofs at trial intending to recover allowable medical expenses reflecting the services provided by Spine Specialists. *Coffey v State Farm Mut Auto Ins Co*, 183 Mich App 723, 727; 455 NW2d 740 (1990) ("Prejudice sufficient to justify denial of a motion to amend arises when amendment would prevent a party from having a fair trial."). Moreover, although defendant contends that it had to wait until trial before it could verify that the assignment's validity, there is nothing in the record suggesting that it even attempted to verify the assignment's validity before trial.